## AUGUST TERM, 1799.

Present, ELLSWORTH, Chief Justice, and PATERSON, CHASE and WASHINGTON, Justices.

---

STATE OF NEW YORK *v.* STATE OF CONNECTICUT *et al.*

*Injunction.—Equity process.*

An injunction will neither be granted by the court, nor a single judge, without reasonable notice to the adverse party, or his attorney: what is reasonable notice.

An injunction will not be granted, to stay proceedings in common-law suits, at the instance of a state, not a party thereto, nor interested in their decision.

A *subpœna* in equity must be served sixty days before the return-day.

BILL in Equity. "The State of New York, one of the United States of America, by Josiah Ogden Hoffman, the attorney-general of the said state," filed this bill in consequence of the rejection of the motion to grant writs of *certiorari*, for the removal of *Fowler* v. *Lindsey* and *Fowler* v. *Miller* (3 Dall. 411),[1] from the circuit court of Connecticut into the supreme court The plaintiffs in those suits were made defendants to the present bill ; and the complainant, after setting forth the title of New York to the lands in question, prayed (*inter alia*) for an injunction against them. The notices to the defendants, that the injunction would be moved for, were delivered on the 25th and 26th of July; but on the 6th of August,(a) *Ingersoll*, who appeared for the individuals, though not for the state, referred to the act of congress, which provides, that "no writ of injunction shall be granted, in any case, without reasonable previous notice to the adverse party or his attorney, of the time and place of moving for the same. (1 U. S. Stat. 334–5, § 5.) And ne contended, that reasonable notice had not been given in this case.

---

(a) The term commenced on the 5th of August, but a *quorum* of the judges did not attend until the day following; and CUSHING and IREDELL, Justices, were prevented by indisposition from taking their seats on the bench, during the whole term.

[1] In Fowler *v.* Lindsey, a *certiorari* was refused, because the state was not a party to the record; in this case, an injunction was denied, because she was not interested in the ejectments.

*Hoffman* (the Attorney-General of New York) contended, that the notice was reasonable in relation to its present object; though it might not be sufficient for requiring the defendant to put in an answer or demurrer to the bill. The injunction prayed for is not a perpetual one, but only until answer, and further order of the court. Nor ought the section of the act of congress to be extended by construction; for a universal application of the rule would be unreasonable, and in many cases, enable the party to defeat the very purpose of an injunction. It is questionable, indeed, whether the section at all relates to a motion, either in the supreme court or the circuit court, for an injunction; since its only object seems to have been, to vest in a single judge the same power that the courts previously possessed, to grant the writs of injunction and *ne exeat*. But at all events, if the court shall think notice of such a motion necessary, they will construe the shortest notice to be reasonable notice, for the purpose of preserving peace, and effectuating justice.

*Ingersoll*, in reply.—With respect to the state of Connecticut, it is a fact, that since the decision on the motion for a *certiorari*, at the last term, there has not been a meeting of the legislature; so that it is impossible to ascertain what course she will adopt on the occasion; and with respect to the individual plaintiffs in the circuit court, it is a matter of great importance, that a trial on their rights should not be suspended, by the interposition of a state, whose interests cannot be affected by any decision that may be given below. It is enough, however, that by the positive provisions of the act of congress, it is contemplated, that no injunction shall issue, in any case, unless satisfactory reasons are assigned; and that, therefore, reasonable notice of an application for the writ, must be given to the adverse party.

The opinion of the Court was delivered by the Chief Justice.

ELLSWORTH, Chief Justice.—The prohibition contained in the statute, that writs of injunction shall not be granted, without reasonable notice to the adverse party or his attorney, extends to injunctions granted by the supreme court or the circuit court, as well as to those that may be granted by a single judge. The design and effect, however, of injunctions, must render a shorter notice, reasonable notice, in the case of an application to a court, than would be so construed, in most cases of an application to a single judge: and until a general rule shall be settled, the particular circumstances of each case must also be regarded. Circumstanced as the present case is, the notice which has been given, is, in the opinion of the court, sufficient, as it respects the parties against whom an injunction is prayed.

*3]                  *SAME CAUSE.

THE bill in this case contained an historical account of the title of New York, to the soil and jurisdiction of the tract of land in dispute; set forth an agreement of the 28th of November 1683, between the two states, on the subject; and prayed a discovery, relief and injunction to stay the proceeding in the Connecticut ejectments. 3 Dall. 411. As the state had not appeared, the question of injunction was the only one now argued.

*Hoffman* (the Attorney-General of New York), in support of the prayer for an injunction, and the general merits of the bill, urged various points,

with great force and ability.   1st. It is necessary to execu_e the special agree-
ment between the states: it is a principle of .equity, that wherever there is
an agreement as to a right, whether it is a mere franchise, or a right of soil, it
shall be enforced and rendered conclusive upon the parties, by the interposi-
tion of the court.   The agreement admits that the tract of land belonged to
New York ; and the bill states, that notwithstanding this admission, Con-
necticut has since undertaken to grant a part of it to the plaintiffs in the
ejectments.   Hence, it became necessary (or the bill would have been in-
complete) to make those plaintiffs parties to the present suit.   The agree-
ment, indeed, only gives the equitable title to New York ; while the plaintiffs
below possess the legal title, and must, of course, recover in the ejectments.
A specific performance of the agreement being decreed against Connecticut,
would not be an adequate and complete remedy ; and all parties in interest,
however remote, must be brought before the court, or they cannot be affect-
ed by its proceedings.   2d. It will prevent a multiplicity of suits.   The bill
is emphatically a bill of peace ; since, considering the character of the par-
ties to the principal controversy, without this remedy, the consequences upon
the public tranquillity can hardly be conjectured.   It is true, however,
that the right of the state of New York cannot be affected by a decision in
the circuit court ; but until that right is lawfully settled, the number of suits,
by individuals, must be indefinitely great ; and merely to avoid a multi-
plicity of suits, to cut off, by one decision, various sources of strife and liti-
gation, is a substantive ground· for the exercise of  a chancery jurisdiction.
1 Atk. 282; 2 Ibid. 484.   3d. It is a bill for the discovery of title, which
parties in interest, as well as parties in possession, may certainly maintain.
1 Ves. 249.(a)   4th. It is a bill to settle a question *of boundary be-      [*4
tween two states.  Of this question, the court can, incontestably, take
cognisance ; and it will not allow the decision of the principal matter to be
interrupted or prevented by collateral considerations; particularly, when the
decision of the principal, will settle all the inferior matters in dispute.   In
*Penn* v. *Baltimore*, 1 Ves. 454, the bill was sustained upon similar princi-
ples; and the jurisdiction there assumed, upon principle, in a case of con-
tested provincial boundary, may surely be exercised here under the additional
sanction of the constitution.   2 Dall. 442, 415, 419; 3 Ibid. 1, 412.   But it
is not simply a bill to settle a question of boundary between two states ;
it involves the right of soil, which, in relation to a great part of New York,
results from the right of jurisdiction ; so that, deciding the latter, is virtu-
ally a decision of the former.   In this respect, New York is, perhaps, distin-
guished from her sister states, whose claims of territory are, generally,
founded upon positive grant ; while her claim of soil is a mere incident
of the sovereignty and jurisdiction with which the revolution invested
her.(b)

---

(a) WASHINGTON, Justice.—Does the bill state, that the plaintiff is ignorant of the
defendant's title ?

*Hoffman.*—Yes, expressly.

WASHINGTON, ·Justice.—Then· you are· aware, that if the injunction should be
granted, upon that ground, it must, of course, be dissolved, as soon as the discovery
is obtained.

(b) PATERSON, Justice.—Generally speaking, the proposition is true, that, as to
states, jurisdiction and the right of soil go together.

New York v. Connecticut.

*Ingersoll*, against granting the prayer for an injunction.—In the suits below, the state of New York is not a party, and cannot be affected by their decision ; while the defendants below are not parties to the present bill, though they are the persons most likely to be injured by those suits. But no part of the bill states that any of the land belongs to New York ; so *non constat* that she is interested in the question of soil ; and the question of state boundary cannot be decided, as between the states, in the circuit court.(a) There is no instance of the interposition of a court of *equity, by way of injunction, unless upon the application of a party immediately interested in the subject of the common-law suits, or there is property likely to be withdrawn. 1 Ch. Prec. 186–7 ; Gilb. Ch. 19 ; 2 Dall. 402 ; 5 Bot. Car. Canc. 439 ; Hind. Ch. 585. Besides, there is a regular course, in which the judgment of this court, independent of its equity character, may be obtained ; as, by a writ of error, on a demurrer to evidence, the construction and effect of the alleged agreement between the states might here be revised, and authoritatively declared ; and "suits in equity cannot be sustained in any court of the United States, in any case where plain, adequate and complete remedy may be had at law."(b) (1 U. S. Stat. 82, § 16). Cowp. 215–6 ; 2 H. Black. 187. An eventual responsibility cannot constitute a party to the suits below. The several states should, in justice, refund the price of the confiscated estates, if those, who have now brought suits against the purchasers under their respective laws, should succeed ; and Pennsylvania was bound, in honor, to compensate General Irwine for the loss of Montour's Island, on the failure of the title derived from her grant (3 Dall. 425) ; but surely, such considerations will not constitute parties to a judicial proceeding. As to a discovery of title, by whom and

---

(a) ELLSWORTH, Chief Justice.—If the bill contains no averment of a right of soil in New York, I think, it must be defective, and lays no foundation for an injunction. To have the benefit of the agreement between the states, the defendants below (who are the settlers of New York) must apply to a court of equity as well as the state herself ; but in no case can a specific performance be decreed, unless there is a substantial right of soil, not a mere political jurisdiction, to be protected and enforced. Besides, is not the bill, likewise, defective for want of making the defendants below parties to it ?

CHASE, Justice.—The validity of the grant of either state must depend upon the question of boundary ; for neither New York nor Connecticut could grant land, which it did not own. Hence, I think, the question of boundary must necessarily arise in the suits below.

PATERSON, Justice.—On the question just proposed by the chief justice, it may be remarked, that some difficulty would occur in sustaining a bill in this court, at the suit of the defendants below. But it does not appear to me, that any of the cases in the books apply to the present case. What does the bill present ? A case of disputed boundaries between two states ; and the question of soil, on their conflicting grants, must be decided by the question of jurisdiction. The state of Connecticut has granted out the Gore : the state of New York has also granted out the Gore. The grantees of Connecticut have brought suits in Connecticut, against the grantees of New York, and will obtain possession of the land. If the grantees of New York are thus evicted, they will brings uits in New York, and, on their possession. But where will this feud and litigation end ? It is difficult and painful to conjecture, unless this court can, under the constitution, lay hold of the case, to decide the question of boundary, which will be a decision of all the appendages and consequences.

(b) PATERSON, Justice.—The rule was so before, and is so, independent of the provision in the act of congress.

4

against whom is it sought? One party to the suit does not require it from another, but a third person requires it, in a suit to which he is not a party, and the decision in which cannot affect his right, whatever it may be.

*Lewis*, for the complainant, in reply.—The difficulties of the case are obvious to all ; and unless the present remedy is applied, the difficulties will dangerously increase. If the lands are not in Connecticut, the ejectments are *coram non judice :* if they are not in New York, suits there would be equally objectionable. Neither state will be satisfied, however, by the judgment of a court held in the other ; and for want of a peaceful *forum* to decide the controversy, an odious and vindictive litigation may be perpetuated. But this court has a constitutional jurisdiction on a question of boundary between states ; and upon such an occasion, will be eager to exercise it. The interest of New York, too, is sufficient to justify the exercise of it, upon her application. The right and possession of a sovereign state, are not to be treated like the usufructuary right, the *possessio pedis,* of a farmer. A sovereign state possesses what she governs. But is not New York interested, even in a pecuniary point of view, so as to claim the interposition *of this court, to which her settlers, the defendants below, cannot originally resort? It is a fundamental principle of the law of [*6 nature and of nations, that every government is bound to preserve peace and order, to protect individuals, to indemnify those who trust to its faith, and to prevent a dismemberment of its territory. This political and moral obligation, enforced by a regard to her public improvements, and fiscal operations, creates an interest of the highest character in the government of New York ; and such as the court will cherish with all its benevolence and authority. 21 Vin. Abr. 181, pl. 1 ; Ibid. 183, pl. 4, 5, 7 ; Ibid. pl. 8, 11 ; 3 Black. Com. 255-6.

The Court, after advisement, delivered their opinion, that as the state of New York was not a party to the suits below, nor interested in the decision of those suits, an injunction ought not to issue.

Injunction refused.(*a*)

### Same Cause.

As the state of Connecticut did not appear, *Hoffman* moved that she should appear on the first day of next term, or that the plaintiff be then at liberty to proceed *ex parte.* (3 Dall. 335.) But *Lewis* observed, that the rule required that a *subpœna* issuing in a suit in equity, should be served

---

(*a*) *Hoffman.*—In every grant by New York, there is a reservation of gold and silver mines, and of five acres per cent. for roads. The bill might, besides, be amended, by averring the state to be interested in a *residuum* of the land, if that would be sufficient to sustain the prayer for an injunction.

Washington, Justice.—The amendment would not satisfy me; for my opinion is founded upon the fact, that New York is not interested in the suits below.

Chase, Justice.—It is a mere bill to settle boundaries; and we must take it as we find it, not as it might be made.

Ellsworth, Chief Justice.—If there had been a quorum of judges, without my attendance, I should have declined sitting in this cause. As it is, I am glad, that the opinion of my brethren, dispenses with the necessity of my making a part in the decision.

sixty days before the return ; which had not been done in the present case The first motion was, thereupon, waived ; and an *alias subpœna* awarded. (3 Dall. 320.)