**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**March 28, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.                                                        No. 04-6384

MARGARET ANN GORDON,

Defendant - Appellant.

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. NO. CR-04-147-1-R)**

Submitted on the briefs:[*]

William P. Earley, Assistant Federal Public Defender, Oklahoma City, Oklahoma, for Defendant - Appellant.

John C. Richter, United States Attorney, and Randal A. Sengel, Assistant United States Attorney, Oklahoma City, Oklahoma, for Plaintiff - Appellee.

Before **KELLY**, **LUCERO**, and **TYMKOVICH**, Circuit Judges.

**KELLY**, Circuit Judge.

---

[*] This matter is submitted on the briefs by this court's own motion, dated October 10, 2006, pursuant to Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G).

Defendant-Appellant Margaret Ann Gordon appeals from the district court's order requiring her to pay restitution for credit card fraud in the amount of $68,698.52. Ms. Gordon argues the amount of restitution exceeds the statutory limits set forth in the Mandatory Victim Restitution Act (MVRA). See 18 U.S.C. § 3663A. The government filed two motions for enforcement of the plea agreement,[1] see United States v. Hahn, 359 F.3d 1315, 1328 (10th Cir. 2004) (en banc) (per curiam), arguing that Ms. Gordon waived her right to appeal the amount of restitution. Ms. Gordon responds that her challenge to the amount of restitution is not covered by her waiver of appellate rights and that, if it is, she did not enter the waiver knowingly and voluntarily. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we determine that Ms. Gordon may appeal the restitution order. We vacate that order and remand to the district for the entry of a restitution order in the amount of $7,950.98.

Background

On August 9, 2004, Ms. Gordon pled guilty to an Information charging her with a single count of credit card fraud in violation of 18 U.S.C. § 1029(a)(2):

> [T]he defendant herein, knowingly and with intent to defraud used an unauthorized access device during a one-year period, that is Mastercard XXXX-XXXX-XXXX-9512, in a manner that affected interstate commerce, and by such conduct obtained something of

---

[1] We denied the government's first motion in an order dated April 12, 2005.

2

value of $1,000 or more.

R. Doc. 1, at 1.

The loss associated with this count was $7,950.98. Ms. Gordon entered into a written plea agreement that did not place an express limit on the amount of restitution that could be ordered. Instead, the agreement stated: "the Court must order the payment of restitution to the victim(s) of the offense." I. R. Doc. 8, at 2. It also contained a waiver of Ms. Gordon's appellate rights. On November 19, 2004, the district court sentenced Ms. Gordon to serve eighteen months of imprisonment followed by three years of supervised release. It ordered her to pay restitution in the amount of $68,698.52.

The Pre-Sentence Report (PSR) included, as relevant conduct, monetary losses other than those associated with the count of conviction. Specifically, the PSR considered losses resulting from six other incidents where Ms. Gordon fraudulently used credit cards belonging to other persons.[2] The total loss resulting from the count of conviction and the other incidents was $68,698.52. The district court used that amount to calculate the guidelines sentence, and also based its restitution order on that amount. Ms. Gordon did not object to the restitution order at sentencing. On appeal, she challenges the restitution order to

---

[2] Ms. Gordon was hired to be a caretaker for two elderly women who subsequently died. She used credit cards in their names (and procured new credit cards using their personal information) and had the credit card statements mailed to a post office box under her control. Ms. Gordon also used the personal checks of one of the women after she died.

the extent it requires payments for losses not causally linked to the count of conviction. The government argues that Ms. Gordon's waiver of appellate rights bars her challenge to the restitution order.

## Discussion

I.   The Scope of the Waiver of Appellate Rights

Waivers of appellate rights are generally enforceable. Hahn, 359 F.3d at 1318. Consequently, before reaching the merits of this appeal, we must determine whether such review is precluded by the waiver. First, we must determine "whether the disputed appeal falls within the scope of the waiver of appellate rights." Id. at 1325. If the appeal does not fall within the scope of the waiver, our analysis ends and we may proceed to the merits. If the appeal is within the scope of the waiver, we must next determine "whether the defendant knowingly and voluntarily waived [her] appellate rights," and "whether enforcing the waiver would result in a miscarriage of justice. . . ." Id.

Plea agreements are governed by contract principles. United States v. Rockwell Int'l Corp., 124 F.3d 1194, 1199 (10th Cir. 1997). One key principle is the doctrine of contra proferentem; that ambiguities in agreements are to be construed against the drafter. See Restatement (Second) of Contracts § 206 (1981). Thus, in determining the scope of a waiver, the court must strictly construe any ambiguities in the agreement against the government (the drafter)

4

and in favor of the defendant.  <u>Hahn</u>, 359 F.3d at 1325.  This means waivers should be narrowly construed.  <u>Id.</u>

Ms. Gordon's plea agreement contains the following waiver of appellate rights:

Defendant understands that a sentencing guideline range for her case will be determined by the Court under the guidelines issued by the U.S. Sentencing Commission.  Defendant also understands that the Court <u>has jurisdiction and authority to impose any sentence within the statutory maximum for the offense(s) to which she is pleading guilty</u>.  Defendant further understands that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742 give her the right to appeal the judgment and sentence imposed by the Court.  Acknowledging all this, defendant in exchange for the promises and concessions made by the United States in this plea agreement, knowingly and voluntarily waives her right to:

(a)  <u>Appeal or collaterally challenge her guilty plea and any other aspect of her conviction</u>, including but not limited to any rulings on pretrial suppression motions or any other pretrial dispositions of motions and issues;

(b)  <u>Appeal, collaterally challenge, or move to modify under 18 U.S.C. § 3582(c)(2) or some other ground, her sentence as imposed by the Court and the manner in which the sentence is determined, provided the sentence is within or below the applicable guideline range determined by the Court to apply to this case</u>. . . .

(c)  It is provided that (i) defendant specifically does not waive the right to appeal an upward departure from the sentencing guideline range determined by the Court to apply to this case, and (ii) her waiver of rights to appeal and to bring collateral challenges shall not apply to appeals or challenges based on changes in the law reflected in Tenth Circuit or Supreme Court cases decided after the date of this agreement that are held by the Tenth Circuit or Supreme Court to have retroactive

5

effect.

R. Doc. 8, at 5-6 (emphasis added).

Other relevant provisions of the plea agreement stated: (1) "[t]his agreement applies only to the criminal violations described and does not apply to any civil matter or any civil forfeiture proceeding except as specifically set forth," id. at 1, and (2) "the Court must order the payment of restitution to the victim(s) of the offense," id. at 2.

> Ms. Gordon's petition to enter a plea of guilty further stated:
>
> If you plead GUILTY the judge may require you to make restitution to any victim of the offense (18 U.S.C. § 3579 [for pre-Guidelines violations], 3663, and 3664). If you plead GUILTY to an offense that occurred on or after April 24, 1996, and the offense falls into certain categories of offenses, including property offenses and crimes of violence, ordinarily the judge is required to order you to pay restitution to any victim of the offense (18 U.S.C. § 3663A).

R. Doc. 9, at 4 (emphasis added) (bracketed text in original)

Because Ms. Gordon argues that the restitution order is unlawful under the MVRA, our task is discrete: we need only determine whether Ms. Gordon waived the right to challenge an unlawful restitution order.[3] In this regard, we think it clear that Ms. Gordon preserved her right to appeal such an order.

Analysis of the scope of a waiver of appellate rights must extend beyond discrete clauses. A contract must be "interpreted as a whole," and "[w]ords and

---

[3] We need not decide whether Ms. Gordon waived the right to appeal the amount of restitution generally, although we have no doubt that a defendant may, by inclusion of specific language in the plea agreement, agree to such a waiver.

other conduct are interpreted in the light of all the circumstances." Restatement, supra, at § 202(1),(2). Furthermore, "if the principal purpose of the parties is ascertainable it is given great weight." Id. § 202(1). In this case, the plea agreement, read in its totality, suggests the parties only intended that Ms. Gordon would waive the right to appeal aspects of her sentence and restitution that were imposed within the authority granted to the district court by the relevant statutes.[4] For example, the first paragraph of the waiver states: "Defendant also understands that the Court has jurisdiction and authority to impose any sentence within the statutory maximum for the offense(s) to which she is pleading guilty." R. Doc. 8, at 5 (emphasis added). Furthermore, Ms. Gordon only waived the right to collaterally attack her sentence "provided the sentence is within or below the applicable guideline range determined by the Court." Id. at 6 (emphasis added). These clauses suggest, at the very least, that Ms. Gordon did not waive the right to appeal a sentence of imprisonment beyond that which could be lawfully imposed. More broadly, they also suggest Ms. Gordon did not intend to waive the right to appeal an unlawful restitution order. See United States v. Gordon, 393 F.3d 1044, 1050 (9th Cir. 2004) ("A restitution order which exceeds its authority

_____

[4] This case is different from one where a defendant merely challenges the district court's factual calculation of the amount of restitution linked to an offense. Such an appeal would be precluded by a general waiver of the right to appeal the amount of restitution. In this case, however, the parties appear not to dispute that only $7,950.98 is causally linked to the offense of conviction. Thus, Ms. Gordon asks us to determine whether, as a legal matter, the district court's restitution order was unlawful.

7

under MVRA is equivalent to an illegal sentence.  Such a restitution order is in excess of the maximum penalty provided by statute and, therefore, the waiver of appeal is inapplicable to it.") (internal citations, alterations, and quotations omitted); United States v. Broughton-Jones, 71 F.3d 1143, 1147 (4th Cir. 1995) ("Because a restitution order imposed when it is not authorized . . . is no less 'illegal' than a sentence of imprisonment that exceeds the statutory maximum [such] appeals . . . are similarly outside the scope of a defendant's otherwise valid appeal waiver.").

Moreover, we question whether Ms. Gordon could have waived her right to appeal an unlawful restitution order, even if she wanted to do so.  A plea agreement permitting a court to impose a restitution order beyond that authorized by statute might well be unenforceable on grounds of public policy.  See Richard A. Lord, 6 Williston on Contracts, § 12:4 (4th ed. 2006).  In fact, several reported cases have suggested a defendant cannot waive the right to appeal an unlawful sentence.  See, e.g., United States v. Cockerham, 237 F.3d 1179, 1182 (10th Cir. 2001); DeRoo v. United States, 223 F.3d 919, 923 (8th Cir. 2000); United States v. Baramdyka, 95 F.3d 840, 843 (9th Cir. 1996).  The same reasoning applies to cases involving an unlawful restitution order.  Indeed, Hahn implies this rule, because an otherwise valid waiver of appellate rights may be invalidated if it results in a miscarriage of justice and an unlawful sentence or an unlawful restitution order results in a miscarriage of justice.  See 359 F.3d at 1327.

8

Nevertheless, the language of the plea agreement itself suggests Ms. Gordon did not intend to waive the right to appeal any aspect of her sentence or restitution that was beyond that authorized by the pertinent statutes.

Furthermore, we must construe the plea agreement against a general backdrop of legality. See United States v. Ready, 82 F.3d 551, 559 (2d Cir. 1996). This means that we should presume that "all promises made were legal, and that the non-contracting 'party' who implements the agreement (the district judge) will act legally in executing the agreement." Id. (citing Walsh v. Schlecht, 429 U.S. 401, 408 (1977)). Surely then, Ms. Gordon was also entitled to presume, when she entered the plea agreement, that the judge would order restitution in a legal manner. See E. Allen Farnsworth, Farnsworth on Contracts § 9.2 (3d ed. 2004) (noting that "existing law is part of the state of facts at the time of agreement" and that a mistake of fact is grounds for relief). Indeed, this would seem to be an implied term of the agreement. Accordingly, Ms. Gordon's challenge to the lawfulness of the restitution order is beyond the scope of the waiver of appellate rights.

II. The Unlawful Restitution Order

Because we find that Ms. Gordon's appeal is outside the scope of her waiver of appellate rights, we may proceed directly to the merits of her claim. This court reviews the legality of a restitution order de novo. United States v. Nichols, 169 F.3d 1255, 1278 (10th Cir. 1999). Because Ms. Gordon did not

9

object to the amount of restitution at sentencing, we review for plain error.

United States v. Mitchell, 429 F.3d 952, 961 (10th Cir. 2005).

In the past, we have implied that the MVRA does not set a statutory maximum on the amount of restitution.  See United States v. Wooten, 377 F.3d 1134, 1144 n.1 (10th Cir. 2004); see also United States v. Sharp, 442 F.3d 946, 952 (6th Cir. 2006).  In reality, however, the MVRA does set a statutory maximum on the amount of restitution–it is, absent two exceptions discussed below, the amount causally linked to the offense of conviction.[5]

The MVRA states in relevant part:

> [W]hen sentencing a defendant convicted of an offense . . . the court shall order, in addition to, or in the case of a misdemeanor, in addition to or in lieu of, any other penalty authorized by law, that the defendant make restitution to the victim of the offense or, if the victim is deceased, to the victim's estate. . . .  For the purposes of this section, the term "victim" means a person directly and proximately harmed as a result of an offense for which restitution may be ordered . . . .

18 U.S.C. § 3663A(a)(1),(2) (emphasis added).

Courts have no inherent power to order restitution; they may only do so as authorized by statute.  Nichols, 169 F.3d at 1278.  Interpreting the Victim and Witness Protection Act of 1982 (VWPA), we held that restitution "is authorized only for losses caused by conduct underlying the offense of conviction."  United States v. Brewer, 983 F.2d 181, 183-84 (10th Cir. 1993) (citing Hughey v. United

---

[5] The point we implied in Wooten is that the amount causally linked to the offense charged is not capped by the statute.  See Wooten, 377 F.3d at 1144 n.1.

10

States, 495 U.S. 411, 420 (1990)). In Hughey, the defendant was indicted for multiple counts of fraudulent credit card use but pled guilty to only one count. 495 U.S. at 413. The Supreme Court held that the defendant could be ordered to pay restitution under the VWPA only for the amount of loss resulting from the count to which he pled guilty. Id. at 422.

The MVRA, which amended the VWPA in 1996, did not change the general rule that restitution may only be ordered for losses caused by the offense of conviction. In only two cases does the MVRA authorize restitution to be paid to someone other than the victim (or his estate) of the offense of conviction. The first is where the criminal conduct involves a "scheme, conspiracy, or pattern of criminal activity." 18 U.S.C. § 3663A(a)(2); see also id. (extending restitution in such cases to "any person directly harmed by the defendant's criminal conduct"); United States v. Fogg, 409 F.3d 1022, 1028 (8th Cir. 2005) ("Unless the charged offense has a scheme, conspiracy, or pattern of criminal activity as an element, . . . the restitution order may only cover losses from the specific offense for which the defendant was indicted and convicted."). In this case, the offense of conviction does not contain as an element a scheme, conspiracy, or pattern of criminal activity.

Second, the MVRA authorizes restitution "to persons other than the victim of the offense," "if agreed to by the parties in a plea agreement." 18 U.S.C. § 3663A(a)(3). We do not think such a promise can be found in the plain language

11

of Ms. Gordon's plea agreement, although such a promise could have been included.  The plea agreement stated, "the Court must order the payment of restitution to the victim(s) of the offense."  I. R. Doc. 8, at 2 (emphasis added).  Additionally, Ms. Gordon's petition to enter a guilty plea stated, "the judge may require you to make restitution to any victim of the offense."  R. Doc. 9, at 4 (emphasis added).  It is noteworthy that the plea agreement and petition to enter a guilty plea refer to "the offense" in the singular.  Ms. Gordon pled guilty to only one offense, and that was the illegal use of Mastercard #9512.  That offense had only one victim, and the loss to that victim caused by the offense was only $7,950.98.  If Ms. Gordon agreed to pay restitution to multiple victims, it was only to the extent that the single count to which she pled guilty caused loss to multiple victims.  Although it could have been so structured, nowhere in the plea agreement, the petition to enter a guilty plea, or the plea colloquy did Ms. Gordon ever agree to pay restitution for losses caused by acts of credit card fraud other than the single count to which she pled guilty.

Although it may be argued that Ms. Gordon's post-plea conduct at the sentencing hearing indicates she was willing to pay restitution to all the victims of her alleged credit card fraud, that is not the agreement that was entered into. When a contract is sufficiently clear on its face, we cannot reach a contrary interpretation based on post-hoc statements of intent or subsequent actions.  See Restatement, supra, at § 203(b) (noting that "express terms are given greater

12

weight than course of performance"). If the language of Ms. Gordon's plea agreement was ambiguous, her post-plea conduct might be relevant. See United States v. Gebbie, 294 F.3d 540, 551-52 (3d Cir. 2002). But, in this case, the plain language of the plea agreement shows Ms. Gordon did not agree to pay restitution beyond the amount causally linked to the single count to which she pled guilty. Thus, the district court was only authorized to order restitution in the amount of $7,950.98. As a result, the $68,698.52 restitution order is unlawful in these circumstances.

The government urges that we should exercise discretion and not recognize plain error. See United States v. Olano, 507 U.S. 725, 732 (1993) (noting that appellate courts may decline to reverse plain error). It suggests that our power to recognize plain error should be used sparingly, and only in those circumstances in which a miscarriage of justice would result. See id. at 736. Aside from the fact that an unlawful restitution order does constitute a miscarriage of justice because it is beyond the remedy authorized by statute, see Hahn, 359 F.3d at 1327, this court has, on several previous occasions, held that an unlawful restitution order constitutes plain error, see, e.g., United States v. Smith, 156 F.3d 1046, 1057 (10th Cir. 1998); United States v. Guthrie, 64 F.3d 1510, 1515 (10th Cir. 1995); United States v. Herndon, 982 F.2d 1411, 1421-22 (10th Cir. 1992). We see no reason to deviate from that precedent. The district court's restitution order is

VACATED and the case is REMANDED for entry of an order in the amount of

$7,950.98.

04-6384, *United States v. Gordon*

**TYMKOVICH**, J., dissenting.

I would enforce the plea waiver.  In my view, Gordon agreed to pay restitution to the multiple victims of her crimes.

As part of a plea deal, the government agreed to drop all but one count against Gordon in exchange for her guilty plea.  Accordingly, she entered into a written plea agreement in which she agreed to be charged for the fraudulent use of one of the credit cards.  The losses associated with the use of that card were $7,950.98.  The plea agreement, however, did not place any express limits on the amount of restitution that could be ordered, stating that "the Court must order the payment of restitution to the victim(s) of the offense."  Vol. 1 D. 8 at 2.

Prior to sentencing, the government submitted a Presentence Report (PSR) to the court.  The PSR recommended Gordon pay the following restitution to the victims of the frauds: Chase USA for $9,942.69; Discover Card for $7,795.59; Citicorp Credit Services, Inc. for $34,365.51 (four Citicorp cards were involved, including the one charged in the indictment); and Target Financial Services for $16,594.73.  The PSR also made plain that all four amounts would "be used in establishing the sentencing guideline calculations."   Vol. 4 D. 1 at 12–14.  Gordon initially objected to the loss calculation, but withdrew all objections at sentencing.  In accordance with the PSR recommendation, the district court

sentenced her to eighteen months imprisonment and ordered her to pay restitution totaling $68,698.52.

## I.

An appellate waiver will be enforced if (1) the disputed appeal falls within the scope of the waiver; (2) the waiver was made knowingly and voluntarily; and (3) enforcing the waiver will not result in a miscarriage of justice. *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004).

We interpret the terms of a plea agreement "according to contract principles and what the defendant reasonably understood when he entered his plea." *United States v. Arevalo-Jimenez*, 372 F.3d 1204, 1206 (10th Cir. 2004) (quoting *United States v. Chavez-Salais*, 337 F.3d 1170, 1172 (10th Cir. 2003)). Moreover, while we construe "any ambiguities in these agreements [] against the Government," *United States v. Porter*, 405 F.3d 1136, 1142 (10th Cir. 2005) (internal quotation omitted), we start by "examin[ing] the plain language of the plea agreement." *United States v. Taylor*, 413 F.3d 1146, 1151 (10th Cir. 2005). If the plain language is dispositive of the issue, our inquiry is at an end. *Id.* at 1152. Even so, we may also look to the conduct of the parties to help ascertain the meaning of an appeal waiver. *Chavez-Salais*, 337 F.3d at 1173 (looking to Rule 11 colloquy). *See also United States v. Gebbie*, 294 F.3d 540 (3d Cir. 2002) ("[F]aced with an ambiguous plea agreement, we must look to extrinsic evidence that may evince the

2

parties' intent." *Id*. at 551. "[Only if the] extrinsic evidence does not resolve the ambiguity, then we construe the ambiguity against the drafter." *Id*. at 551–552.).

I think Gordon understood her plea waiver precluded a challenge to the amount of restitution. First, the agreement contains a broad appellate waiver:

> [Gordon] knowingly and voluntarily waives her right to . . . appeal, collaterally challenge, or move to modify . . . her sentence as imposed by the Court and the manner in which the sentence is determined, provided the sentence is within or below the applicable guideline range determined by the Court to apply to this case.

Vol. 1 D. 8 at 5–6. Second, the plea agreement expressly contemplates an award of restitution as part of the sentence. Under the section "Maximum Penalty, Restitution and Special Assessments," the agreement provided that "*the Court must order payment of restitution to the victim(s) of the offense*." Vol. 1 D. 8 at 2 (emphasis added).

## II.

As a preliminary matter, Gordon conceded that mandatory restitution was expressly a part of the plea agreement ("the court must order the payment of restitution to the victim(s) of the offense"). The plain language of the plea agreement encompasses restitution and the other ordinary incidents of sentencing as part of the appellate waiver. The length of imprisonment, any fines or assessments, and restitution are all listed as and understood to be a part of the

3

court's sentencing function and thus are properly considered within the scope of the appellate waiver.

The only question here, then, is whether the *amount* of restitution awarded is within the scope of the plea agreement. I think it is. First, as discussed above, the plea agreement plainly acknowledges that mandatory restitution will be imposed as part of sentencing. The amount of restitution, like the length of her prison term or amount of fines, is not specified. Understanding that the ultimate sentence to be imposed was within the discretion of the sentencing court so long as it did not exceed the statutory maximum, Gordon agreed to enter the plea. She cannot now be heard to complain that the waiver is somehow invalid because it failed to set forth the amount of restitution possible. We have never held a plea agreement's appeal waiver unenforceable simply because it failed to establish the terms of the sentence with specificity. In fact, our cases "have consistently and repeatedly held that broad waivers are enforceable even where they are not contingent on the ultimate sentence falling within an identified sentencing range." *United States v. Montano*, 472 F.3d 1202, 1205 (10th Cir. 2007) (citing *Hahn*, 359 F.3d at 1328–29); *United States v. Sandoval*, 477 F.3d 1204 (10th Cir. 2007) (defendant's general waiver of appellate rights regarding his sentence precluded appeal of supervised-released terms, despite the fact that plea did not specifically reference these terms, because supervised-release is part of the sentence). I see no reason to treat the term of sentence and the amount of restitution any differently.

4

Indeed, restitution is an inseparable component of a criminal sentence, particularly in the context of financial crimes as we have here.

Second, although the plea agreement does not specify the exact amount of restitution, it contemplates that Gordon's other frauds and victims will be considered by the court during sentencing. It expressly provides that the district court may look to multiple victims of her frauds and "order the payment of restitution to the victim(s) of the offense." Vol. 1 D. 8 at 2. Moreover, when she entered her plea of guilty, Gordon acknowledged the district court could examine related criminal conduct in imposing a sentence. The Petition to Enter Plea of Guilty specifically states that "the court is required to take into account all conduct, circumstances, and injuries associated with your criminal conduct, *whether or not this conduct* is charged by the Government in the crime to which you are pleading guilty." Vol. 1 D. 9 at 5. Gordon was thus on notice that all relevant conduct, including restitution to multiple "victim(s)" would be considered in sentencing her as a part of the plea agreement.

Supporting the language of the plea agreement, the record discloses the parties understood that the recommended sentence and amount of restitution would be based on the government's presentence investigation and report. Following the presentence investigation, the government prepared a PSR which disclosed a recommended sentence, including a contemplated amount of restitution based on Gordon's credit card frauds. Gordon thus knew well before sentencing that her

related credit card offenses would be part of the amount of restitution proposed to the district court.

After the PSR was released, Gordon lodged a written objection to the contemplated amount of restitution. She wrote: "Defendant denies that the loss amount is at $68,698.52. This loss includes charges and debits including interest and late fees and miscellaneous fees along with legitimate charges made by card holder Marilyn Harman." Vol. 1 D. 13. at 1. This objection was based on the technicalities of her crime, and had nothing to do with the fact that the recommended restitution exceeded the plea agreement.

In addition to being based on an entirely distinct theory than advanced on appeal, this objection was expressly withdrawn by Gordon at sentencing:

THE COURT: [Prosecutor], I believe you were about to call your next witness.

GORDON'S COUNSEL: Your Honor, may I approach?

THE COURT: Yes.

GORDON'S COUNSEL: Your Honor, we and – [the Prosecutor] and I have talked over some of the objections that I have. If I could just have a minute to visit with my client, I think we may wish to withdraw those objections.

THE COURT: Take your time.

GORDON'S COUNSEL: Your Honor, at this time, we wish to withdraw all objections. We were only arguing one of the objections and only that objection I believe because of some misunderstanding as to names. We wish to withdraw that.

THE COURT:  That would be in regard to the loss attributable to – I believe it was Ms. – is her name Harman?

GORDON'S COUNSEL:  Yes, Your Honor.  The misunderstanding was, as you can see from the United States' exhibit, each of these says that the cards were in the name of Martha Coffey – that's not correct.  They were in the name of Marilyn Harman, yes.

THE COURT:  I think that the – what it's saying is the PO box is in the name of Martha Coffey.

GORDON'S COUNSEL:  That's where we had the mistake.  And there's another paragraph that they actually get the names interchanged.

THE COURT:  Ms. Gordon, you're satisfied and you agree with your counsel's announcement that you wish to withdraw your objection in this regard?

DEFENDANT GORDON:  Yes.

Vol. 2 at 48–50.  Apparently, Gordon's counsel discussed the amount of restitution with the prosecutor and concluded that reviving the objection was not in Gordon's best interest.  The sentencing judge gave counsel an opportunity to consult with Gordon in the courtroom, after which he asked Gordon whether she agreed to withdraw the objection.  She said that she did.

Moreover, Gordon's position on appeal—that she did not knowingly agree to pay restitution to multiple victims—is undermined by the fact that her prior objection was premised on an understanding that her victims would be recompensed.  Specifically, her written objection rested not on the notion that the loss amount calculated exceeded her crimes, but rather that the calculation included "legitimate charges" made by the original card holder.

7

This understanding is also revealed more subtly by the concession of Gordon's counsel at the plea hearing on August 9, 2004. Before the PSR was released and more than three months before sentencing, counsel told the court:

> GORDON'S COUNSEL: We do not intend to challenge the [sentencing] guidelines, Your Honor. We're – we are going to review the documentation provided to us by the United States Attorney's Office *as to the amount of loss totally, not necessarily as to this single offense that the Government has filed*. So I think that the United States Attorney and I will be able to sit down and more accurately depict exactly what the loss is. And that, of course, will determine where this defendant falls within the guideline range.

Vol. 2 at 8. It is clear that Gordon's counsel was aware even *before* the PSR was released, that Gordon's sentence, including restitution, would be based on the total loss caused by her conduct and not just the charge of offense.

Thus, while the plea agreement was clear as to Gordon's commitment to pay restitution for her fraud, the conduct of the parties also revealed their mutual understanding that restitution could be ordered for all victims of Gordon's fraudulent conduct. Her representations at sentencing—namely the quashing of her objections to amounts of restitution and failure to seek withdrawal of her

8

guilty plea based on misunderstanding or mistake[1]—convince me that she knew and accepted that she would be ordered to pay restitution to all of her victims.

At the very least, Gordon waived any challenge to the amount of restitution (including an amount encompassing restitution to multiple victims) by withdrawing all of her objections at sentencing. In these circumstances, I see no plain error by the district court at sentencing.

## III.

Gordon also advances a statutory argument that this appeal falls outside the scope of the appellate waiver based on her reading of the Mandatory Victim Restitution Act (MVRA). She claims the district court was authorized under the MVRA to order restitution only in the amount of $7,950.98, the loss associated with the count of conviction. § 3663A(a)(1). Thus, she argues the amount of restitution exceeds the statutory maximum allowable for the crime and therefore falls outside the scope of the plea agreement. This argument fails because

---

[1] A defendant who has entered a plea agreement may move to withdraw the plea prior to sentencing. The standard for withdrawal requires the defendant to show a "fair and just reason" for withdrawal, Fed. R. Crim. P. 32(d), which in this circuit turns on a balancing of various factors, such as whether the defendant has asserted actual innocence, prejudice to the government, and inconvenience to the court. *See, e.g.*, *United States v. Graham*, 466 F.3d 1234, 1237–39 (10th Cir. 2006); *United States v. Gordon*, 4 F.3d 1567 (10th Cir. 1993). Gordon's failure to suggest to the court that restitution was improper or to withdraw her plea based on the claimed overbreadth of the PSR's restitution recommendation casts doubt on her view that it was not encompassed in the plea agreement.

§ 3663A(a)(3) allows courts to assess restitution to other victims where the parties agree, and here the plea agreement contemplates restitution to multiple victims.

Gordon's related argument is that an award of restitution beyond the count of conviction takes her sentence outside the guideline range and thus exceeds the scope of the appellate waiver. The MVRA, however, contains no statutory cap on restitution nor does it indicate that the amount of restitution must fall within any particular guideline range. For example, in upholding a restitution award in the face of a defendant's claim that the amount exceeded the dictates of the MVRA, the Sixth Circuit held:

> Because the restitution statutes do not contain a maximum penalty, Sharp cannot be heard to complain that the restitution order violates the statutory maximum for his offense. Furthermore, the restitution order did not constitute a punishment in excess of the Guidelines range deemed applicable by the court. Unlike other penalties, such as imprisonment or supervised release, the amount of restitution ordered or the method of its calculation is not determined by the Guidelines. Because there is no applicable Guidelines range for the amount of restitution, the restitution order could not have constituted an upward departure from such a range.

*United States v. Sharp*, 442 F.3d 946, 952 (6th Cir. 2006).

I agree with the court in *Sharp*. An award of restitution must be linked to the actual conduct of the defendant and is not subject to any specific cap. We are not faced with a situation where the defendant claims restitution exceeded the actual criminal conduct: Gordon does not deny that she was responsible for the

10

losses stemming from each of the credit cards she used, but rather that she should not be obligated to pay restitution for losses beyond the formal charge.

Accordingly, I would enforce the plea waiver.

## IV.

In the end, the complications in this case will require the government to revise its plea agreements to avoid the problems identified by the majority opinion. I, for one, see no problem with defendants agreeing to pay restitution to multiple victims as part of a plea deal, even if the amount of restitution will be calculated as part of the presentence investigation.

11