**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 1, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ARMANDO BONILLA,

    Defendant - Appellant.

No. 18-6016
(D.C. No. 5:17-CR-00149-C-1)
(W.D. Oklahoma)

_____

## ORDER AND JUDGMENT[*]
_____

Before **LUCERO**, **HARTZ**, and **McHUGH**, Circuit Judges.
_____

Armando Bonilla appeals the district court's imposition of a $5000 special

assessment imposed under 18 U.S.C. § 3014(a). On appeal, the government has

invoked the appellate waiver contained in Mr. Bonilla's plea agreement. We conclude

Mr. Bonilla's challenge falls within the scope of the appellate waiver, that he

knowingly and voluntarily waived his appellate rights, and that enforcing the waiver

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

would not result in a miscarriage of justice. Accordingly, we enforce the appellate waiver and dismiss Mr. Bonilla's appeal.

## I.    BACKGROUND

Mr. Bonilla, a foreign citizen with an Immigration and Customs Enforcement detainer, pleaded guilty to one count of receiving child pornography, in violation of 18 U.S.C. § 2252A(a)(2) and (b)(1). The plea agreement advised Mr. Bonilla of the sentencing consequences he faced, including a $250,000 fine, a $100 mandatory special assessment, and a $5000 additional special assessment. The plea agreement contained an appellate waiver, which stated, in pertinent part:

> [D]efendant waives his right to appeal his sentence as imposed by the Court, including any restitution, and the manner in which the sentence is determined. If the sentence is above the advisory guideline range determined by the Court to apply to his case, this waiver does not include the defendant's right to appeal specifically the substantive reasonableness of his sentence[.]

ROA Vol. I at 41. At his plea hearing, the government stated the sentencing consequences Mr. Bonilla faced, again advising him regarding the $5000 additional special assessment. The government and the district court also advised Mr. Bonilla of the terms of the appellate waiver. Mr. Bonilla acknowledged that he understood the appellate waiver and the sentencing consequences he faced by pleading guilty, and he stated he was satisfied with his counsel's services. The district court found that Mr. Bonilla "voluntarily and knowingly" entered a plea of guilty "with full understanding of the rights that [he was] giving up." Plea Transcript at 18.

A Presentence Investigation Report ("PSR") presented the following facts regarding Mr. Bonilla's financial situation. For the year and three months leading up to his arrest, Mr. Bonilla was employed as a general laborer and had a monthly income of $2080. From 2014 through 2016, Mr. Bonilla was employed as an oilfield pusher. And, for the vast majority of time between September 2008 and April 2012, Mr. Bonilla was employed as a welder and had a monthly income of $2426.67. In a PSR interview, Mr. Bonilla "reported he has property in Mexico, valued at $10,000" and "has a Jeep Cherokee in Mexico." ROA Vol. II at 20. Mr. Bonilla, however, indicated that it would be hard to sell his property because there is no way to "advertise" the property for sale given the drug cartel activity. *Id.* Mr. Bonilla further indicated that he provides financial support for his three children and for other family members. Finally, Mr. Bonilla "denied having any liabilities."[1] *Id.*

The PSR concluded that Mr. Bonilla did not have the ability to pay a fine. However, the PSR identified the $5000 additional special assessment under 18 U.S.C. § 3014 as applying to any non-indigent person without stating any conclusion as to whether Mr. Bonilla was indigent. Mr. Bonilla objected to the PSR's discussion of the $5000 special assessment and specifically "request[ed] *findings* of inability to pay the $5000.00 special assessment based on the *fact* that he is indigent. . . ." *Id.* at 27 (emphasis added). At sentencing, the district court concluded that Mr. Bonilla

---

[1] The PSR noted that some of the information provided by Mr. Bonilla during his PSR interview was "inconsistent with the affidavit for court appointed counsel, as well as the financial information reported during his pretrial interview." ROA Vol. II at 20; *see id.* at 26–27.

"has assets and the ability to earn [money], and that makes him not indigent." ROA Vol. III at 14; *see id.* at 12–13. Accordingly, the district court imposed the $5000 special assessment as part of Mr. Bonilla's sentence.

On appeal, Mr. Bonilla challenges the imposition of the $5000 special assessment, arguing that he is indigent. The government filed a motion to dismiss the appeal based on Mr. Bonilla's appellate waiver. A motions panel denied the motion without prejudice. The parties briefed the merits of Mr. Bonilla's appeal, and the government reasserted its position that the appellate waiver requires dismissal of Mr. Bonilla's appeal.

## II. DISCUSSION

Where the government seeks dismissal of an appeal based on an appellate waiver, we must determine whether the waiver precludes review of the issue on appeal before considering the merits of the appeal. *United States v. Gordon*, 480 F.3d 1205, 1207 (10th Cir. 2007). "Whether a defendant's appellate waiver as set forth in a plea agreement is enforceable is a question of law we review *de novo*." *United States v. Lonjose*, 663 F.3d 1292, 1297 (10th Cir. 2011). "This Court will enforce a defendant's appellate waiver so long as: (1) the disputed issue falls within the scope of the waiver of appellate rights; (2) the defendant knowingly and voluntarily waived his appellate rights; and (3) enforcing the waiver would not result in a miscarriage of justice." *Id*. (citing *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc)).

4

## A. *Appellate Argument Within Scope of Waiver*

"We construe a defendant's plea agreement according to contract principles and what the defendant reasonably understood when he entered his plea." *Id.* (internal quotation marks omitted). "We strictly construe the scope of appellate waivers[,] and any ambiguities in these agreements are read against the Government and in favor of a defendant's appellate rights." *United States v. Porter*, 405 F.3d 1136, 1142 (10th Cir. 2005) (internal quotation marks omitted). "Analysis of the scope of a waiver of appellate rights must extend beyond discrete clauses. A contract must be 'interpreted as a whole,' and '[w]ords and other conduct are interpreted in the light of all the circumstances.'" *Gordon*, 480 F.3d at 1209 (quoting Restatement (Second) of Contracts § 202(1), (2) (1981)).

The appellate waiver in Mr. Bonilla's plea agreement precluded an appeal challenging "his sentence as imposed by the Court . . . and the manner in which the sentence is determined." ROA Vol. 1 at 41. The only exception to the waiver was for a substantive reasonableness challenge to a sentence "above the advisory guideline range." *Id*. Relative to the imposition of a special assessment, the Guidelines adopt "the amount prescribed by statute" rather than providing an independent advisory range. United States Sentencing Guidelines Manual § 5E1.3 (2016). Thus, where 18 U.S.C. § 3014 prescribed an additional special assessment of $5000, the district court's imposition of a $5000 additional special assessment was not above the guideline range.

5

Furthermore, special assessments are "punitive" in nature, *United States v. King*, 891 F.2d 780, 783 (10th Cir. 1989), such that the imposition of a special assessment is part of a defendant's sentence, *see United States v. Pethick*, 513 F.3d 1200, 1201 (10th Cir. 2008) (describing sentence as including special assessment). To that point, the plea agreement clearly advised Mr. Bonilla that he faced the $5000 additional special assessment as part of his sentence and, at the plea hearing, the government stated that Mr. Bonilla would face the $5000 special assessment if the district court concluded he was not indigent. Yet, Mr. Bonilla, through the plea agreement, did not seek to reserve the right to appeal the district court's indigency determination. Therefore, where (1) the additional special assessment was part of Mr. Bonilla's sentence; (2) the special assessment imposed by the district court was not above the amount prescribed by the Guidelines; and (3) Mr. Bonilla did not reserve the right to appeal the district court's indigency determination, Mr. Bonilla's challenge to the district court's imposition of the $5000 special assessment falls within the scope of the appellate waiver.

In an attempt to escape this conclusion, Mr. Bonilla argues that a challenge to a sentence in excess of the district court's statutory authority does not fall within the scope of an appellate waiver. In *Gordon*, we concluded that the defendant's waiver of his right to appeal his sentence did not foreclose a challenge to the imposition of a sentence "beyond that which could be lawfully imposed." 480 F.3d at 1209; *see id.* ("A plea agreement permitting a court to impose a restitution order beyond that authorized by statute might well be unenforceable on grounds of public policy."). We

6

have since clarified that the exception from *Gordon* "is extremely narrow and applies *only in the case where there is no factual dispute* . . . and the legality of the district court's [sentence] can therefore be reviewed solely as a question of law." *United States v. Cooper*, 498 F.3d 1156, 1160 (10th Cir. 2007) (emphasis added).

As required by 18 U.S.C. § 3014, the district court, before imposing the additional special assessment, concluded that Mr. Bonilla was not indigent. Encompassed in Mr. Bonilla's challenge on appeal is the issue of whether or not he was indigent. But whether a defendant is indigent is not a pure question of law. *See United States v. Kelley*, 861 F.3d 790, 801 (8th Cir. 2017) ("The indigence determination under § 3014 is a fact issue, and as in analogous contexts, we will review the district court's fact-finding for clear error."); *cf. United States v. Trujillo*, 136 F.3d 1388, 1398 (10th Cir. 1998) ("We reject a district court's findings regarding a defendant's ability to pay a fine only if they are clearly erroneous.").

In Mr. Bonilla's case, for instance, the PSR shows there were disputed facts underlying whether Mr. Bonilla was indigent. And the sentencing transcript shows the district court relied on Mr. Bonilla's assets in Mexico and his ability to work and earn money to conclude that Mr. Bonilla was not indigent. Even more emblematic of the factual nature of the issue before us, in his response to the government's motion to dismiss, Mr. Bonilla admitted that factual disputes arose at sentencing relative to whether he was indigent. Response to Motion to Dismiss at 9–10 ("There was some debate at sentencing whether Mr. Bonilla or his mother had assets in Mexico and the value of those assets, especially in light of the fact he would be deported to return to

live with his mother in Mexico after he was released from custody."). Mr. Bonilla's response to the motion to dismiss went on to state: "Any factual finding suggesting Mr. Bonilla was not indigent at the time of sentencing is erroneous and Mr. Bonilla should be able to make those arguments on appeal." *Id.* at 10. Accordingly, Mr. Bonilla's appellate challenge to the imposition of the special assessment is not solely a question of law. Therefore, Mr. Bonilla's challenge does not fall within *Gordon*'s "extremely narrow" exception regarding the scope of appellate waivers.[2]

**B.** ***Knowing & Voluntary Waiver of Appellate Rights***

"We only enforce waivers that defendants enter into knowingly and voluntarily." *United States v. Tanner*, 721 F.3d 1231, 1233 (10th Cir. 2013) (quotation marks omitted). In determining whether a defendant knowingly and voluntarily waived his appellate rights we consider (1) "whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily" and then (2) whether the district court conducted "an adequate Federal Rule of Criminal Procedure 11 colloquy." *Hahn*, 359 F.3d at 1325. The burden is on

---

[2] Mr. Bonilla directs us to *United States v. Janatsch*, 722 F. App'x 806, 810 (10th Cir. 2018), for the proposition that a challenge to the imposition of a special assessment under 18 U.S.C. § 3014 is a question of law falling within the exception to appellate waivers recognized in *United States v. Gordon*, 480 F.3d 1205, 1209 (10th Cir. 2007). *Janatsch*, however, does not provide any explanation regarding why that defendant's challenge to the special assessment was a pure question of law, does not discuss *United States v. Cooper*, 498 F.3d 1156, 1160 (10th Cir. 2007), and appears inconsistent with our previous conclusion that a defendant's financial ability to satisfy a monetary penalty involves a question of fact. Thus, in addition to not being precedential authority, *Janatsch* has minimal persuasive value within the context of Mr. Bonilla's effort to invoke the *Gordon* exception despite effectively challenging the district court's factual findings regarding indigency.

the defendant to demonstrate that "his waiver was not knowing and voluntary." *Tanner*, 721 F.3d at 1235.

Mr. Bonilla argues that "[t]he legal issue raised by the district court's imposition of the $5,000.00 special assessment was not foreseen by the parties when the agreement was executed." Response to Government's Motion to Dismiss at 6. This assertion cannot be squared with the plea agreement and the plea colloquy. As stated in our discussion of the scope of the appellate waiver, the plea agreement clearly identified the fact that Mr. Bonilla was subject to the $5000 additional special assessment. Further, during the plea colloquy, the government, in reciting the penalties Mr. Bonilla faced by pleading guilty, stated: "And if the Court ultimately determines that Mr. Bonilla is not indigent—and he may well be—he could also get a $5,000 additional special assessment." Plea Transcript at 4. Thereafter, Mr. Bonilla, without raising any questions regarding the district court's potential to find that he was not indigent, indicated that he understood the punishments he faced. Accordingly, contrary to Mr. Bonilla's argument on appeal, the record demonstrates that Mr. Bonilla was advised that he faced a $5000 additional special assessment and the parties contemplated the possibility that the district court might conclude he was not indigent. The fact the district court subsequently rejected Mr. Bonilla's argument that he was indigent does not alter the knowing and voluntary nature of Mr. Bonilla's appellate waiver.

## C.    *No Miscarriage of Justice*

"The burden rests with the defendant to demonstrate that the appeal waiver results in a miscarriage of justice." *United States v. Anderson*, 374 F.3d 955, 959 (10th Cir. 2004). To satisfy this burden, the defendant must demonstrate the appellate waiver is

> subject to certain exceptions, including [1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful.

*Hahn*, 359 F.3d at 1327. Mr. Bonilla relies on the fourth exception. "For the waiver to be invalid on the ground of unlawfulness, the unlawfulness must seriously affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Sandoval*, 477 F.3d 1204, 1208 (10th Cir. 2007) (internal quotation marks omitted). Here, none of Mr. Bonilla's three arguments under the fourth exception demonstrates that the district court acted unlawfully.

First, Mr. Bonilla contends that the imposition of the additional special assessment is unlawful because, where he qualified for court-appointed counsel, he must have been indigent as a matter of law. But "[a] defendant need not be 'indigent' to qualify for appointed counsel. Rather, he or she need only be financially unable to obtain counsel." *United States v. Nichols*, 841 F.2d 1485, 1506 (10th Cir. 1988) (internal quotation marks omitted). In this sense the "[f]inancial inability" standard for obtaining court-appointed counsel "is a lesser standard than indigency." *Id.* Thus, the fact that Mr. Bonilla received court-appointed counsel does not demonstrate that

10

the district court acted unlawfully when determining that Mr. Bonilla was not indigent for purposes of the additional special assessment.

Second, Mr. Bonilla suggests the district court was required to limit its indigency analysis to Mr. Bonilla's financial status at the time of sentencing. But, Mr. Bonilla does not cite any case law in support of this proposition, and the text of 18 U.S.C. § 3014(a) does not provide any guidance regarding how a district court should evaluate indigency. Furthermore, circuit courts have approved of considering future earning capacity when determining if a defendant is indigent for purposes of a special assessment under § 3014. *See Kelley*, 861 F.3d at 802 (noting defendant's college degree and employable skills when concluding that, despite negative net worth, the defendant's "ability to earn money in the future precluded a finding of indigence for purposes of § 3014"); *see also United States v. Rodgers*, 711 F. App'x 229, 229 (5th Cir. 2018) (citing *Kelley* for proposition that district court may consider "future earnings or employability" when determining indigency for purposes of § 3014); *United States v. Janatsch*, 722 F. App'x 806, 811 (10th Cir. 2018) ("[N]othing in [§ 3014] precludes an examination of future ability to pay as part of a holistic assessment of the indigency determination."). Accordingly, Mr. Bonilla's second argument does not establish that the district court acted unlawfully when imposing the additional special assessment.[3]

---

[3] Even if the analysis was limited to the time of sentencing, Mr. Bonilla's statements, as recorded in the PSR, indicate that, at the time of sentencing, the value of his assets exceeded the $5000 additional special assessment.

Finally, Mr. Bonilla contends that his deportation following completion of his term of imprisonment renders him indigent, as a matter of law, because it limits his future ability to earn. We are unpersuaded by this argument. The additional special assessment shall remain in force for twenty years after entry of judgment or twenty years after release from imprisonment, whichever is later. *See* 18 U.S.C. §§ 3014(g), 3613(b). Mr. Bonilla fails to demonstrate that the district court could not have concluded that Mr. Bonilla could, while in Mexico, earn sufficient wages to pay the special assessment in due time. *Cf. United States v. Thompson*, 227 F.3d 43, 46 (2d Cir. 2000) (collecting cases and concluding likelihood of deportation does not immunize defendant from monetary penalties and that fine may be imposed on individual facing immediate deportation). Accordingly, Mr. Bonilla fails to advance an argument that satisfies the fourth miscarriage of justice exception.

### III.    CONCLUSION

Because Mr. Bonilla's challenge on appeal falls within the scope of the valid and enforceable appellate waiver in his plea agreement, we **DISMISS** the appeal.

Entered for the Court

Carolyn B. McHugh
Circuit Judge

12