**F I L E D**

PUBLISH

**June 28, 2005**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

**PATRICK FISHER**
**Clerk**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MARSHELL CANTRELL TAYLOR,

Defendant-Appellant.

No. 04-6174

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. NO. CR-03-198-HE)**

Paul Antonio Lacy, Assistant Federal Public Defender (Teresa Brown, Assistant Federal Public Defender with him on the brief), Office of the Public Defender, Oklahoma City, Oklahoma, for Defendant-Appellant.

Scott L. Palk, Assistant United States Attorney (Robert G. McCampbell, United States Attorney with him on the brief), Office of the United States Attorney, Oklahoma City, Oklahoma, for Plaintiff-Appellee.

Before **KELLY** , **McWILLIAMS** , and **TYMKOVICH** , Circuit Judges.

**TYMKOVICH** , Circuit Judge.

Marshell Cantrell Taylor, pursuant to a plea agreement, pled guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), and waived

his right to appeal his sentence. During sentencing, the district court made findings of fact that enhanced Taylor's sentence under the United States Sentencing Guidelines. Taylor appealed his sentence, and while it was pending the Supreme Court handed down *Blakely v. Washington*, 124 S. Ct. 2531 (2004), and *United States v. Booker*, 125 S. Ct. 738 (2005).

Taylor argues his appeal is valid because one of the exceptions to his waiver of appellate rights applies—that he can appeal based on "changes in the law reflected in Tenth Circuit or Supreme Court cases decided after the date of this agreement." Assuming he can pursue his appeal, Taylor also argues the district court violated *Booker* by (1) making findings of fact at sentencing, and then (2) misapplying the facts to the Guidelines' enhancement for possession of a firearm in connection with a drug offense. Finally, during oral argument Taylor asserted the district court violated the Supreme Court's recent holding in *Shepard v. United States*, 125 S. Ct. 1254 (2005) (issued three days before oral argument), when it determined he was subject to a fifteen-year mandatory minimum sentence under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), as a result of three prior convictions for violent felonies.

Taking jurisdiction pursuant to 28 U.S.C. § 1291, we hold Taylor can pursue this appeal because the appeal waiver does not apply to the Supreme Court's newly announced sentencing cases. We conclude Taylor cannot

demonstrate the district court plainly erred when it enhanced his sentence based on a finding he possessed a firearm in connection with a controlled substance offense. As to the applicability of *Shepard*, however, the record does not demonstrate the basis for the district court's determination that Taylor had committed three prior violent felonies. We therefore remand so the district court can review the evidence of prior convictions in light of *Shepard*.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Beginning in May 2003, police in Norman, Oklahoma, working in cooperation with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), conducted an undercover investigation of Taylor. During the investigation, police made several undercover purchases of drugs and guns from Taylor. Of importance to this appeal is one specific incident. On June 16, 2003, an undercover officer contacted Taylor by phone seeking drugs. Taylor stated he did not have enough money to buy drugs from his supplier and, accordingly, could not sell any to the undercover officer. Taylor did, however, have a .357 Ruger pistol. Eventually, the conversation resulted in Taylor agreeing to (1) sell the undercover officer the pistol for $250; (2) use the money to purchase drugs from his supplier; and (3) turn around and sell the drugs to the undercover officer.

On the morning of June 17 the undercover officer purchased the Ruger from Taylor for $250. Later that same day, Taylor sold the undercover officer 3.9

grams of cocaine base for $300. After the transaction completed, officers arrested Taylor.

Subsequent to his arrest but before his indictment, Taylor agreed to plead guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). The plea agreement Taylor signed indicated that the "maximum penalty that could be imposed as a result of this plea is not more than 10 years imprisonment . . . ." The agreement, however, noted that "Defendant acknowledges and understands that the Court is not bound by, nor obligated to accept any stipulations, agreements or recommendations of the United States or defendant." The agreement also contained a waiver of appellate rights. That waiver, though, contained two explicit exceptions allowing Taylor to bring an appeal based on (1) "an upward departure from the sentencing guideline range determined by the Court," or (2) "changes in the law reflected in Tenth Circuit or Supreme Court cases decided after the date of this agreement that are held by the Tenth Circuit or Supreme Court to have retroactive effect."

During sentencing, the judge examined and adopted the findings of the pre-sentencing report (PSR) and heard testimony from an ATF agent familiar with the case. The PSR chronicled Taylor's extensive criminal history. The judge found three of Taylor's prior convictions were violent felonies for purposes of the ACCA and that the ACCA applied. As a result, the statutory minimum sentence

-4-

Taylor could receive was 15 years imprisonment. *See* 18 U.S.C. § 924(e). In addition, the judge enhanced Taylor's base offense level by finding he possessed a firearm in connection with a controlled substance offense, *see* USSG § 4B1.4(b)(3)(A), i.e., possession with intent to distribute and distribution of drugs. The court concluded Taylor's total offense level was 31, which, with his criminal history, subjected him to a sentence of 188 to 235 months.

Taylor objected to the application of the ACCA and to the enhancement for possession of a firearm in connection with a controlled substance offense. The judge overruled Taylor's objections. Before the judge announced Taylor's sentence, Taylor apologized to the court for his crimes and his attorney requested the court sentence Taylor at the low end of the Guidelines because he had to support his family and did not want to spend a long time away from his children. After considering the PSR, the agent's testimony, and Taylor's statements, the judge sentenced Taylor near the high end of the Guidelines range, 230 months. The judge based the sentence "on the fact that the circumstances here show a wide range of serious criminal activity being conducted immediately prior to the arrest . . . [a]nd that recidivism I think is an additional factor I think suggesting a need to protect the public from further crimes." [App. Vol. II, p. 25-26.]

On May 24, 2004, Taylor appealed. The Supreme Court decided *Blakely* on June 24, 2004 and *Booker* on January 12, 2005.

## II. ANALYSIS

### A. TAYLOR'S APPEAL WAIVER

In cases such as this where a defendant waived his appellate rights pursuant to a plea agreement, we must first determine whether the defendant can appeal his sentence notwithstanding the appellate waiver. *See United States v. Hahn*, 359 F.3d 1315, 1321-25 (10th Cir. 2004) (en banc). To do this, we examine "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice as we define herein." *Id.* at 1325. When construing an appellate waiver, we apply "well-established contract principles" and examine the plain language of the plea agreement. *United States v. Porter*, 405 F.3d 1136, 1142 (10th Cir. May 3, 2005). In addition, we strictly construe "the scope of [the] appellate waiver[] and [interpret] any ambiguities . . . against the Government and in favor of a defendant's appellate rights." *Id.* (quotations and citation omitted).

In the present case, we need look only at the language of the appellate waiver itself to satisfy ourselves that Taylor can appeal his sentence.[1] The appellate waiver contained an explicit exception that provides:

---

[1] Taylor also argues his plea was not voluntary. The sentencing transcript conclusively belies this argument and our independent review of the record leaves no doubt that the plea was voluntary. We therefore reject this argument.

> [Taylor's] waiver of rights to appeal and bring collateral challenges shall not apply to appeals or challenges based on changes in the law reflected in Tenth Circuit or Supreme Court cases decided after the date of this agreement that are held by the Tenth Circuit or Supreme Court to have retroactive effect.

Thus, the question in this case is whether *Blakely* and *Booker* changed the law in this circuit regarding sentencing. We think they did.

To begin with, *Blakely* and *Booker* extended *Apprendi v. New Jersey*, 530 U.S. 466 (2000), to sentencing matters by finding that a defendant's Sixth Amendment rights are violated if any fact that increases the penalty for a crime beyond the statutory maximum is not admitted or proved beyond a reasonable doubt. *See generally Blakely*, 124 S. Ct. 2531 (2004); *Booker* 125 S. Ct. 738 (2005). The statutory maximum "is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely*, 124 S.Ct. at 2537 (emphasis deleted); *see also Booker*, 125 S. Ct. at 749; *United States v. Price*, 400 F.3d 844, 847 (10th Cir. 2005). The Court in *Booker* consequently found the Guidelines unconstitutional but remedied their infirmity by making them advisory rather than mandatory. *See Booker*, 125 S. Ct. at 651.

As a result of these Supreme Court rulings, the law in this circuit has been changed with regard to sentencing. Before *Blakely* and *Booker*, the sentencing judge was required to enhance Taylor's sentence under the Guidelines for

-7-

possessing a firearm in connection with another offense. Now, however, the sentencing judge is not required to mandatorily apply the Guidelines, although they will be important to the overall reasonableness of any sentence imposed by a court post- *Booker* . *See United States v. Gonzalez-Huerta* , 403 F.3d 727, 738 (10th Cir. 2005).

Having concluded the law of this circuit has been changed as a result of Supreme Court rulings and our subsequent application of them, *see, e.g., id*. at 729, the more subtle question in this case then is whether these cases "have retroactive effect" for purposes of Taylor's appeal waiver. To begin with, no one would argue these cases do not apply on direct review. *See, e.g., United States v. Labastida-Segura*, 396 F.3d 1140, 1142 (10th Cir. 2005) (applying *Booker* on direct review). It is less obvious, however, whether the plea agreement's retroactivity language referred to a direct appeal, since the parties likely assumed there would be no direct appeal, given the state of the law when the plea agreement was executed. Moreover, the customary usage of the term "retroactive" is in the collateral review context, where habeas petitioners are foreclosed from relief except in those rare cases that the Supreme Court deems to be retroactively applicable to collateral attack. *See Price*, 400 F.3d at 848 (applying Supreme Court's retroactivity analysis and adding, "*Blakely* did not

announce a watershed rule of criminal procedure that would apply retroactively to initial § 2255 motions").

The plain language of Taylor's plea agreement is not so narrowly confined. The agreement itself states that the appellate waiver bars Taylor from pursuing both appeals *and* collateral challenges. The exception in Taylor's waiver, however, allows him to pursue both appeals *and* collateral challenges, so long as they are based on "retroactive" changes in the law. Indeed, if the term "retroactive" only referred to subsequent collateral challenges, the agreement's language regarding "direct appeal" would be superfluous. Because we construe a plea agreement so as to give effect to all of its words and phrases, *see Porter*, 405 F.3d at 1142, we read the term "retroactive" on direct appeal as referring to changes in the law made after the execution of the plea agreement and including those decided while the direct appeal is pending.[2] The plea agreement by its terms, of course, will not allow a subsequent collateral attack to the sentence unless the Supreme Court expressly finds that a decision will be applied retroactively on habeas review. *See Johnson v. McKune*, 288 F.3d 1187, 1194 (10th Cir. 2002).

---

[2] Taylor timely filed his notice of appeal. It is fortuitous that the Supreme Court announced *Blakely* contemporaneously with his filing of the appeal, and that *Booker* was announced shortly before oral argument. The appeal waiver exception will not apply to similar cases if the time for filing an appeal has passed.

In sum, based on the language of his agreement, Taylor can appeal his sentence.

**B. APPLICATION OF *BOOKER* TO TAYLOR'S SENTENCE**

In this appeal, Taylor argues the district court violated *United States v. Booker*, 125 S. Ct. 738 (2005), in two ways. First, the court committed constitutional *Booker* error by making the factual finding that he used a firearm in connection with another offense. *See Gonzalez-Huerta*, 403 F.3d at 731. Second, the court committed non-constitutional *Booker* error by mandatorily applying the Guidelines in sentencing Taylor. *Id.* We conclude that neither *Booker* error warrants re-sentencing in this case.

Taylor's failure to object on constitutional grounds during sentencing requires us to review the district court's enhancement of his sentence for plain error. *See United States v. Dowlin*, 408 F.3d 647, 669 (10th Cir. 2005) (citations omitted). "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*

**1. Constitutional Booker Error**

During sentencing, Taylor objected to the district court's factual finding that he possessed a gun "in connection with" another offense because, he argues, the gun was not used to facilitate the sale of drugs. USSG § 4B1.4(b)(3)(A). The

court's findings and subsequent application of the mandatory Guidelines'
enhancement provisions increased his sentence range from a maximum of 210
months to a maximum of 235 months. Taylor was sentenced to 230 months, 20
months above the maximum without the enhancement.[3]

Taylor's objection at sentencing was not based on the Sixth Amendment or
other constitutional grounds but on the court's interpretation of the Guidelines.
Only on appeal did Taylor assert his sentence violated his Sixth Amendment
rights under *Booker* because the judge found the relevant facts used to determine
the enhancement. Because the judge-found facts increased Taylor's sentence
beyond the maximum allowed by the indictment, this case presents constitutional
*Booker* error.

By now, it is axiomatic under plain error review that a court commits error
that is plain when it enhances a defendant's sentence based on judicially-found
facts. *See, e.g. Blakely,* 124 S. Ct. 2531; *Booker,* 125 S. Ct. 738; *Gonzalez-
Huerta*, 403 F.3d at 732. Because the court below did both, Taylor satisfies the
first two prongs of plain error analysis.

To satisfy the third prong of the plain error test, however, Taylor must
demonstrate that the error affected his substantial rights, i.e., that the error

---

[3] Without the enhancement, the applicable range was 168 to 210 months.
With the enhancement, the applicable range was 188 to 235 months.

disturbed "the outcome of the district court proceedings." *United States v. Cotton*, 535 U.S. 625, 632 (2002). We look to see if there is a "reasonable probability" that the error led to a higher sentence under the Guidelines as applied prior to *Booker*. *See Gonzalez-Huerta*, 403 F.3d at 733. One way of showing a sentencing error affected substantial rights is to show the district court incorrectly applied the Guidelines. *United States v. Smith*, 919 F.2d 123, 124 (10th Cir. 1990). When a sentencing court misapplies the Guidelines, a defendant's substantial rights may be affected if there is more than a reasonable probability that such misapplication led to a higher sentence. *See Gonzalez-Huerta*, 403 F.3d at 739 n.11 (application of the wrong range under the Guidelines affects a defendant's substantial rights in the plain error context).

The district court enhanced Taylor's sentence for two related reasons: (1) Taylor's sale of a firearm to the undercover officer for $250 (the factual determination) was (2) "in connection with" a "controlled substance offense" (the legal determination).[4] In order to determine whether the district court incorrectly applied the Guidelines (and affected Taylor's substantial rights), we must analyze

---

[4] USSG § 4B1.4(b)(3)(A) states that the base offense level of a defendant subject to the ACCA is "34, if the defendant used or possessed the firearm or ammunition in connection with . . . a controlled substance offense, as defined in § 4B1.2(b)."

whether the court correctly concluded that the sale of the firearm by Taylor was "in connection with" a "controlled substance offense."

We have not yet had occasion to interpret the "in connection with" language of USSG § 4B1.4(b)(3). Recently, we observed in interpreting USSG § 2K2.1(b)(5)'s identical "in connection with" language that the Guidelines provide "little guidance regarding the nexus required between firearm possession and the felony offense." *United States v. Brown*, 314 F.3d 1216, 1222 (10th Cir. 2003). Our cases have held, for example, under § 2K2.1 that "if the weapon's possession is coincidental or entirely unrelated to the offense," it is not possessed "in connection with" another offense. *United States v. Gomez-Arrellano*, 5 F.3d 464, 466-67 (10th Cir. 1993). More specifically, "we have generally held that if the weapon facilitated or had the potential to facilitate the underlying felony, then enhancement under [the "in connection with" language] is appropriate." *United States v. Brunner*, 134 F.3d 1000, 1006 (10th Cir. 1998) (citing *Gomez-Arrellano*, 5 F.3d at 466).

Related to the "in connection with" requirement is the Guidelines' broad definition of the term "controlled substance offense." The definition includes not only most forms of drug possession with the intent to distribute, USSG § 4B1.2(b), but also the "offenses of aiding and abetting, conspiring, and attempting to commit such offenses." USSG § 4B1.2, Application Note 1. In our

circuit, a conspiracy or an attempt to commit a crime requires the intent to commit the crime and overt acts in furtherance of that intent. *See United States v. Haynes*, 372 F.3d 1164, 1167 (10th Cir. 2004). And we have previously found that a specific agreement to commit a crime can constitute the requisite overt act for attempt when combined with additional steps in furtherance of the agreement. *See United States v. Bunney*, 705 F.2d 378, 381 (10th Cir. 1983) (detailed conversations discussing how and when buildings were to be destroyed constituted substantial step and completed attempt).

Applying these principles to the enhancement under USSG § 4B1.2 we conclude the district court did not err in either its factual or legal determinations. Here, Taylor not only made a specific agreement with the undercover officer to sell the Ruger to raise funds in order to buy drugs, which he would then turn around and sell to the undercover officer, but he also met the undercover officer and sold him the firearm. Taylor further agreed to repurchase the Ruger from the officer after the drug transaction had been consummated—closing the circle of firearm for money for drugs for firearm. Indeed, there is no real argument that Taylor engaged in several substantial steps towards the completion of the crime supporting the enhancement (distributing drugs, which is a controlled substance offense) while he possessed a firearm. In short, the firearm facilitated or had the potential to facilitate the crime of drug distribution or attempted drug distribution,

-14-

and was not "coincidental or entirely unrelated" to the crime or attempted crime. *Gomez-Arrellano*, 5 F.3d at 466-67; *Brunner*, 134 F.3d at 1006. The firearm in this case therefore had the required nexus to the predicate controlled substance offense. We are thus satisfied that the district court's legal determination was correct.

As to the court's factual determinations, Taylor has not pointed to any real dispute about the factual background leading to the enhancement. The facts were essentially conceded. Nor does Taylor point to any other factor we have considered under the third prong of plain error review that weighs in favor of finding his substantial rights were affected. *See, e.g.*, *United States v. Clifton*, 406 F.3d 1173, 1181-82 (10th Cir. 2005) (describing ways in which the defendant can satisfy his burden under the third prong). Rather, the only question before the court was whether the essentially undisputed facts were correctly applied under the ACCA enhancement. There being no error in the court's application, Taylor failed to show any prejudice to his substantial rights. He therefore does not meet the third prong of plain error review.

Even if the court's factual and legal determinations satisfied the third prong, as we discuss next, we are satisfied that Taylor, in any event, could not meet the fourth prong of plain error review. *See Gonzalez-Huerta*, 403 F.3d at 735-36 ("We need not determine whether [the defendant] can satisfy this burden

[of showing his substantial rights were affected] because even if he were to meet the third prong, he must also satisfy the fourth prong to obtain relief.").

### 2. Fourth Prong Analysis and Non-Constitutional *Booker* Error

In addition to Taylor's constitutional *Booker* error contention, he also argues the district court committed non-constitutional *Booker* error when it mandatorily applied the Guidelines. While it is true a court commits error that is plain when it applies the Guidelines mandatorily, such an error does not necessarily result in re-sentencing. *See Gonzalez-Huerta*, 403 F.3d at 732, 735.

Turning to the fourth prong analysis of our plain error review, we conclude Taylor cannot show that the mandatory application of the Guidelines seriously affected the fairness, integrity, or public reputation of judicial proceedings, the fourth prong of plain error review. We recently outlined several factors to help determine whether a defendant has satisfied this fourth prong of plain error review, including among others (1) the weight of evidence supporting the enhancement, (2) the likelihood that the district court would impose a lighter sentence on remand, and (3) a showing that the objective factors of 21 U.S.C. § 3553(a) warrants a departure from the sentence suggested by the Guidelines. *See Dowlin*, 2005 WL 1155882 at *18 (citations omitted). Applying these factors to this case, we conclude we should not exercise our discretion under the fourth prong.

First, we have already found the district court did not err in its interpretation of the ACCA enhancement. The facts underlying the enhancement are essentially undisputed. There is thus little doubt given the overwhelming nature of the facts surrounding the drug transaction that a jury would view the evidence differently. *See United States v. Ambort*, 405 F.3d 1109, 1119 (10th Cir. 2005) (weight of evidence a consideration under fourth prong). Indeed, Taylor concedes he sold the gun to an undercover officer, used those funds to purchase drugs, and sold those drugs to the officer. Taylor's challenge to the enhancement was one of interpretation under those facts.

Second, the sentencing judge expressed serious concerns regarding Taylor's expansive criminal history and sentenced Taylor near the very top of the Guidelines range, 230 out of 235 possible months. This suggests the court would impose a substantially similar sentence on remand. *See United States v. Lawrence*, 405 F.3d 888, 908 (10th Cir. 2005) (finding no plain error where defendant sentenced two months above the bottom of the sentencing range).

Finally, there is no indication the court disregarded or misapplied the 21 U.S.C. § 3553 factors, which allow a court to consider the personal mitigating characteristics of the defendant. *See Clifton*, 406 F.3d at 1181-82. To the contrary, the sentencing court here retained substantial discretion based on those

-17-

factors which it refused to exercise in deciding to sentence Taylor to the high end of the Guidelines' range.

In short, Taylor does not meet our requirements for noticing plain error under the fourth prong of our analysis.

### C. *Shepard* and the ACCA

Although Taylor cannot meet his burden under the plain error standard regarding the enhancement for possession of a firearm in connection with a controlled substance offense, the Supreme Court's recent opinion in *Shepard v. United States*, 125 S. Ct. 1254 (2005), requires us to remand for limited further proceedings.

Three days prior to oral argument in this case, the Supreme Court handed down its decision in *Shepard*. *Shepard* is the Court's most recent explanation of its decision in *Taylor v. United States*, 495 U.S. 575 (1990), which held that when a court determines whether a crime constitutes a violent felony under the ACCA, the Sixth Amendment requires it to take "a formal categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." *Id.* at 600.

Unlike the prior convictions in *Taylor*, which followed jury trials, the prior convictions at issue in *Shepard* were the result of guilty pleas. The Court found "*Taylor's* reasoning controls the identification of . . . convictions following pleas,

-18-

as well as convictions on verdicts." *Shepard*, 125 S. Ct. at 1259. As a consequence, when determining whether a prior conviction resulting from a guilty plea is a violent felony for purposes of the ACCA, a court is limited to an examination of the language of the statute of conviction, "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant . . . , or to some comparable judicial record of this information." *Id.* at 1262.[5] In addition, the ACCA only applies if a person has "three previous convictions by any court . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another . . . ." 18 U.S.C. § 924(e).

Taylor does not dispute his prior convictions are violent felonies. Instead, he argues the record fails to support the district court's conclusion that two of his three prior convictions arose from a different criminal episode under § 924(e).[6] If the record does not show that his prior armed robberies were committed on separate occasions, Taylor claims that *Shepard* and *Taylor* compel the court to disregard the ACCA enhancement.

---

[5] The Supreme Court's decision in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), creates an explicit exception to *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and its progeny by allowing a judge to determine a fact of prior conviction without violating a defendant's Sixth Amendment rights.

[6] Taylor bases this objection on the fact that the abstract of judgment for two of his prior convictions shared a common date of conviction and hearing.

-19-

There is yet very little post-*Shepard* guidance in the case law. Prior to *Shepard*, we held that the ACCA enhancement "was intended to reach multiple criminal episodes distinct in time" and that a court could make this determination under the Guidelines. *United States v. Tisdale*, 921 F.2d 1095, 1098-99 (10th Cir. 1990) (finding three different burglaries in the same building on the same day sufficiently distinct). The Seventh Circuit, however, recently concluded that "whether prior crimes are part of a common scheme is [] a fact question" that a court must resolve after *Shepard* by consideration of a sufficient "judicial record" from the prior proceeding. *United States v. Ngo*, 406 F.3d 839, 842-43 (7th Cir. 2005) (reviewing burglaries ten days apart). In all likelihood, depending on the evidence presented to the court, this type of question will generally be a mixed question of law and fact. *See United States v. Yazzie*, 407 F.3d 1139, 1148 (10th Cir. 2005) (whether underlying facts qualified defendant for Guidelines enhancement was mixed question of law and fact).

Unfortunately, based on the record before us, we cannot determine whether the district court reviewed judicial records consistent with *Shepard*. The PSR appears to have relied upon both police reports and "court documents." At sentencing the judge commented on the PSR and mentioned a report prepared by the probation office. The record, however, does not tell us what these materials were and how they were documented. While it is unlikely that the predicate

crimes of armed robbery arose on the same occasion, we nonetheless are compelled to remand this matter to the district court for the following further limited proceedings:

> 1) to determine whether the government can provide evidence regarding Taylor's prior violent crime convictions consistent with *Shepard*; and

> 2) in the event the government cannot provide such evidence, to resentence Taylor consistent with this opinion and *Shepard*.

### III.  CONCLUSION

This appeal falls within one of the exceptions to the waiver of appellate rights in Taylor's plea agreement and is properly before us.  Having jurisdiction, we conclude the sentencing court did not err when it enhanced Taylor's sentence for possessing a firearm in connection with another offense.  We cannot determine from this record, however, whether the government supplied evidence of prior convictions consistent with the rulings of the Supreme Court.  Accordingly, we remand for further proceedings in light of *Shepard* .