FILED
United States Court of Appeals
Tenth Circuit

June 28, 2017

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

ERIC STANTON KUTZ,

     Defendant - Appellant.

No. 16-6266
(D.C. No. 5:10-CR-00217-F-1)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **EBEL** and **MATHESON**, Circuit Judges.

The sole issue raised by Eric Stanton Kutz, following his resentencing, is whether the district court's determination that he is a "career offender" under § 4B1.1 of the United States Sentencing Guidelines (hereinafter, "Guidelines" or "USSG") is procedurally unreasonable. Also pending before us is the Government's Motion to Supplement the Record or, Alternatively, Motion to Take Judicial Notice (hereinafter, "Motion to Supplement")[1] of Mr. Kutz's Plea

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] The Government also filed a Motion to File Motion to Supplement under Seal,

(continued...)

Agreement and the transcript of the change-of-plea hearing. Exercising jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we grant the Government's Motion to Supplement and conclude Mr. Kutz's appeal falls within the waiver set forth in the Plea Agreement. Accordingly, we dismiss the appeal without reaching the merits.

**I**

In October 2010, Mr. Kutz pled guilty to having been a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and having knowingly and intentionally possessed with intent to distribute fifty grams or more of a substance containing methamphetamine, in violation of 21 U.S.C. § 841(a)(1). In May 2011, he was convicted of these offenses. As relevant here, the district court determined that Mr. Kutz was a "career offender," under USSG § 4B1.1 (2011), and also determined that Mr. Kutz's prior convictions required that his § 922(g)(1) sentence be enhanced pursuant to the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1). Mr. Kutz appealed to challenge the ACCA enhancement. We applied the ACCA's "residual clause," see id. § 924(e)(2)(B)(ii), and affirmed. United States v. Kutz, 439 F. App'x 751, 753 (10th Cir. 2011) (unpublished). However, following the Supreme Court's decision in Johnson v. United States, __ U.S. __, 135 S. Ct. 2551, 2563 (2015),

---

[1](...continued)
which we provisionally granted. We have no need to revisit that determination here.

2

Mr. Kutz moved to vacate his ACCA-enhanced sentence, pursuant to 28 U.S.C. § 2255. The district court granted Mr. Kutz relief.

In late August 2016, the district court resentenced Mr. Kutz without the ACCA enhancement. See United States v. McGaughy, 670 F.3d 1149, 1153 (10th Cir. 2012). More specifically, as relevant here, the district court conducted "de novo resentencing" and entered a new judgment commensurate with those proceedings. United States v. West, 646 F.3d 745, 750 (10th Cir. 2011) (explaining "the default in this circuit is de novo resentencing"); see Magwood v. Patterson, 561 U.S. 320, 338–39 (2010) ("[T]he existence of a new judgment is dispositive. . . . This is Magwood's *first* application challenging that intervening judgment. The errors he alleges are *new*. An error made a second time is still a new error."). In light of this new judgment, we agree with the parties that the claims and arguments Mr. Kutz raised or failed to raise regarding his old sentences—and the district court's and our prior determinations with respect to them—are irrelevant here. See Magwood, 561 U.S. at 338–39. That is to say, as regards the new sentences, we look only to the resentencing proceedings.

At resentencing, the maximum sentence Mr. Kutz could have received for his § 922(g)(1) conviction was 120 months' imprisonment because he is not subject to the ACCA enhancement. And the maximum sentence he could have received for his § 841(a)(1) conviction remained 480 months' imprisonment. Based on these offenses, Mr. Kutz's criminal history category of VI, and his

3

acceptance of responsibility, his advisory sentencing range would have been 110 to 137 months' imprisonment.

However, a presentence investigation report (PSR) stated that, at the time Mr. Kutz committed these federal offenses, he had at least two prior convictions of a "crime of violence," as defined by USSG § 4B1.2 (2015).[2] More specifically, adopting that PSR over Mr. Kutz's objection, the district court determined that Mr. Kutz had two qualifying prior convictions: (1) assault with a dangerous weapon, in violation of Okla. Stat. tit. 21, § 645; and (2) pointing a firearm at another person, in violation of Okla. Stat. tit. 21, § 1289.16. On this basis, the district court determined that Mr. Kutz was a "career offender" to whom a correspondingly higher "offense level" applies, as enumerated in USSG § 4B1.1 (2015).

The district court calculated that Mr. Kutz's advisory sentencing range was 188 to 235 months' imprisonment, the same range the court determined applied at the first sentencing proceeding in 2011. Impressed by Mr. Kutz's record of rehabilitation while incarcerated, the district court varied downward from the range it had calculated. The court sentenced Mr. Kutz to concurrent terms of 120

---

[2] The district court sentenced Mr. Kutz based on the 2015 Guidelines. Mr. Kutz does not contend this was error, and our references are to USSG §§ 4B1.1 and 4B1.2 (2015). Our references to federal statutes are to the versions in effect on March 29, 2010, the date of his federal offenses. References to state statutes are to the versions in effect in 2002, when Mr. Kutz committed those offenses.

4

months' imprisonment for the § 922(g)(1) offense (the statutory maximum) and 150 months' imprisonment for the § 841(a)(1) offense (well below the 480-month maximum).[3]

The sole issue raised by Mr. Kutz is that his sentences are procedurally unreasonable because the district court erred in calculating his Guidelines range. In particular, Mr. Kutz contends that he is not a "career offender" under USSG § 4B1.1 because, he argues, neither of his prior convictions qualifies as a "crime of violence" as that term is defined in USSG § 4B1.2. He points to precedents that, in his view, support his claims with respect to both convictions and notes that his challenge to the predicate status of either offense would entitle him to relief.

In response to Mr. Kutz's sentencing issue, the Government argues that the appeal waiver in Mr. Kutz's Plea Agreement forecloses our consideration of his claim that the district court erred in calculating his advisory sentencing range. To that end, the Government filed the Motion to Supplement, seeking to "supplement the record on appeal" with two documents. Id. at 1. The first document is a copy of the Plea Agreement that Mr. Kutz entered into with the Government on October 6, 2010, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), and which was filed under seal in the district court. Plea Agreement, United States v.

---

[3] The district court also imposed a term of supervised release, which is not at issue here.

5

Kutz, No. 5:10-CR-00217-F (W.D. Okla. Oct. 14, 2010), ECF 40.  The second document is a recently-created transcript of the October 14, 2010, change-of-plea hearing at which the district court accepted Mr. Kutz's guilty plea.

## II

We first address the Government's Motion to Supplement, which we grant in pertinent part.  Second, therefore, we analyze (1) whether this appeal is within the scope of the appeal waiver contained in the Plea Agreement; (2) whether Mr. Kutz pled guilty and entered into the Plea Agreement knowingly and voluntarily; and, if so, (3) whether the waiver nevertheless is unenforceable in these circumstances.  We conclude Mr. Kutz's challenge to the procedural reasonableness of his sentence based on USSG §§ 4B1.1 and 4B1.2 is within the scope of the appeal waiver in the Plea Agreement, which, like his guilty plea, he entered into knowingly and voluntarily, and that no other considerations prevent our enforcement of the waiver.  Consequently, we enforce the waiver and dismiss this appeal without reaching the merits of Mr. Kutz's procedural challenge to his sentence.

### A. Motion to Supplement

We first turn to the Government's Motion to Supplement the record on appeal with the Plea Agreement and the transcript of the change-of-plea hearing. After the Government argued that the Plea Agreement contains a valid and enforceable appeal waiver, Mr. Kutz countered that the Government "has not

6

carried its burden of designating a record sufficient for this [c]ourt to decide" whether the alleged appeal waiver is enforceable and applies to the claim he raises here. Aplt. Reply Br. at 1 (explaining his reply brief was his "first opportunity" to point out that the Government did not file these materials with or before it filed its answer brief).

Mr. Kutz misapprehends the distinction between the record and an appendix. See Fed. R. App. P. 10(a) ("The following items constitute the record on appeal: . . . the original papers and exhibits filed in the district court . . . [and] the transcript of proceedings, if any . . . ."). As we have explained, "all of the transcripts (if they have been ordered) and documents and exhibits filed in the district court remain in the record regardless of what the parties put in the appendix." Milligan–Hitt v. Bd. of Trs. of Sheridan Cty. Sch. Dist. No. 2, 523 F.3d 1219, 1231 (10th Cir. 2008) (footnote omitted).

The Government relies on the Plea Agreement for its argument that Mr. Kutz's claim is foreclosed by a valid and enforceable appeal waiver contained in that agreement. The Plea Agreement was filed in the district court. Thus, the Plea Agreement has always been part of the record that we, Mr. Kutz, and the Government may rely on with respect to any issue in this appeal. See Fed. R. App. P. 30(a)(2).

With a few caveats that are not material here, the same analysis applies to the hearing transcript. As noted, Federal Rule of Appellate Procedure 10

7

explicitly contemplates that, as here, a transcript of the proceedings in the district court might not be filed but, rather, might be ordered only after the transcript is needed to decide an issue on appeal. See Fed. R. App. P. 10(b) (setting forth procedures for ordering transcripts of the district court proceedings). But the "transcripts of proceedings" in the district court "constitute the record on appeal" regardless of when they are created, even if, as here, this occurs long after the events they memorialize. Fed. R. App. P. 10(a)(2).

More specifically, the transcript of the October 14, 2010, change-of-plea hearing was created and certified on January 13, 2017. "When a transcript is complete, the reporter must file it with the district clerk and notify the circuit clerk of the filing." Fed. R. App. P. 11(b)(1)(C). At that point, of course, the transcript of the proceedings takes its place in the record alongside the facts it memorializes, and, like those facts, the transcript may be relied upon by the court or the parties. Cf. Fed. R. App. P. 10(c) (explaining that parties may rely on a district-court-approved statement of the facts "[i]f the transcript of a hearing or trial is unavailable"). Unfortunately, through no fault of the Government, that last step did not happen here; the transcript was not filed in the district court. The day after Mr. Kutz pointed out this omission, the Government sought to correct it by filing the transcript with the Motion to Supplement.

In addition, Mr. Kutz has not shown prejudice by this third-party omission of a transcript. Mr. Kutz refers to the Plea Agreement in his opening brief and he

8

also claims that the "Government expressly waived enforcement of the appeal waiver" to permit his 2011 appeal to proceed. Aplt. Br. at 3. So Mr. Kutz cannot claim surprise at the Government's reliance on documents necessary to address whether the waiver is valid and enforceable. Indeed, Mr. Kutz argues at length in his reply brief why, in his view, the appeal waiver is unenforceable even if one considers, *inter alia*, the hearing colloquy.

Accordingly, the Government's Motion to Supplement is moot with respect to the Plea Agreement, which is already part of the record. We grant the Motion to Supplement the record with the transcript of the October 14, 2010, hearing before the district court. Fed. R. App. P. 10(e)(2) ("If anything material to either party is omitted from or misstated in the record by error or accident, the omission or misstatement may be corrected and a supplemental record may be certified and forwarded . . . by the court of appeals."). We need not address the Government's additional arguments regarding judicial notice.

## B. The appeal waiver is valid and enforceable

The Government seeks to enforce the "appellate waiver" in the Plea Agreement and on that basis asks us to dismiss Mr. Kutz's appeal without reaching the merits. Aple. Br. at 15. Here, the Government raised the appeal waiver issue "for the first time" in its answer brief, having "opted to raise the waiver issue [there], as opposed to [by a] motion" to dismiss the appeal under our local rules. Aplt. Reply Br. at 1; see 10th Cir. R. 27.3(A)(1)(d). As we have

9

explained, there is no rule requiring the Government to file such a motion; it may "raise[] the waiver in its brief." United States v. Calderon, 428 F.3d 928, 930 (10th Cir. 2005). Mr. Kutz counters that the appeal waiver is either invalid or unenforceable.

### 1. *Legal standard*

"This court will hold a defendant to the terms of a lawful plea agreement." United States v. Tanner, 721 F.3d 1231, 1233 (10th Cir. 2013) (per curiam) (quoting United States v. Atterberry, 144 F.3d 1299, 1300 (10th Cir. 1998)). We will enforce an appeal waiver if: (1) "the disputed appeal falls within the scope of the waiver of appellate rights"; (2) "the defendant knowingly and voluntarily waived his appellate rights"; and (3) "enforcing the waiver would [not] result in a miscarriage of justice." United States v. Polly, 630 F.3d 991, 1001 (10th Cir. 2011) (alteration in original) (quoting United States v. Hahn, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc) (per curiam)). The "waiver-enforceability analysis is informed by contract principles, which govern plea agreements." Id. (quoting United States v. Ibarra-Coronel, 517 F.3d 1218, 1221 (10th Cir. 2008)). "Whether a defendant's appeal waiver set forth in a plea agreement is enforceable is a question of law." Id. (quoting Ibarra-Coronel, 517 F.3d at 1221).

### 2. *Scope*

"When construing an appellate waiver, we apply 'well-established contract principles' and examine the plain language of the plea agreement." United States

10

v. Taylor, 413 F.3d 1146, 1151 (10th Cir. 2005) (citation omitted). "[W]e construe a plea agreement so as to give effect to all of its words and phrases . . . ." Id. at 1153. "[W]e must interpret the agreement according to the defendant's reasonable understanding of its terms." United States v. Scott, 469 F.3d 1335, 1338 (10th Cir. 2006). For this reason, "we strictly construe 'the scope of [the] appellate waiver[] and [interpret] any ambiguities . . . against the Government and in favor of a defendant's appellate rights.'" Taylor, 413 F.3d at 1151–52 (alterations in original) (citation omitted).

In Mr. Kutz's case, the provisions of the Plea Agreement purporting to act as a waiver of appellate rights are lengthy and explicit:

### Waiver of Right to Appeal and Bring Collateral Challenge

[Mr. Kutz] understands that the Court will consider those factors in 18 U.S.C. § 3553(a) in determining his sentence. [He] also understands that the Court has jurisdiction and authority to impose *any sentence within the statutory maximum* for the offense(s) to which he is pleading guilty. [Mr. Kutz] further understands that 28 U.S.C. § 1291, and 18 U.S.C. § 3742, give him the right to appeal the judgment and sentence *imposed by the Court*. Acknowledging all this, [Mr. Kutz,] in exchange for the promises and concessions made by the [Government] in this plea agreement, *knowingly and voluntarily waives his right* to:

a. *Appeal* or collaterally challenge his guilty plea, *sentence* and restitution imposed, and any other aspect of his conviction . . . ;

b. Appeal, collaterally challenge, or move to modify under 18 U.S.C. § 3582(c)(2) or some other ground, his *sentence* as imposed by the Court *and the manner in which the sentence is determined*, provided the sentence is *within or below the advisory guideline range determined by the Court to apply to this case*. [He] acknowledges

11

that this waiver remains in full effect and is enforceable, even if the Court rejects one or more of the positions of the [Government] or [Mr. Kutz] set forth in paragraph 7.

  c. It is provided that [Mr. Kutz] specifically does not waive the right to appeal a sentence *above the advisory sentencing guideline range determined by the Court to apply to this case*.

Plea Agreement at 8–9 (emphasis added).

Mr. Kutz is pursuing an *appeal* of his *sentences*, challenging the *manner in which the sentences have been determined*, where those 120-month and 150-month sentences both fall *below* the advisory Guidelines range of 188 months' imprisonment *determined by the court to apply* in his case. Mr. Kutz's appeal falls squarely within the plain-text scope of the "Waiver of Right to Appeal" in the Plea Agreement. Id. at 8.

To counter this text-based conclusion, Mr. Kutz argues that "the terms of" the Plea Agreement "do not address an appeal from resentencing after being granted post-conviction relief." Aplt. Reply Br. at 4. These qualifiers regarding the nature of the district court's proceedings are irrelevant in this instance. Rather, the Plea Agreement explicitly and succinctly covers the exact scenario presented to this court: "[Mr. Kutz] waive[d] his right to . . . [a]ppeal . . . his sentence . . . ." Plea Agreement at 8–9. Mr. Kutz does not even attempt to analyze this or any of the other text in the Plea Agreement.

Whether a proceeding in the *district court* is called a sentencing or a resentencing (here, following a separate, successful collateral attack), the *result*

12

challenged is the same: a sentence that is incorporated in the judgment.  See, e.g., United States v. Lonjose, 663 F.3d 1292, 1300 n.9 (10th Cir. 2011); see also Camreta v. Greene, 563 U.S. 692, 704 (2011) (explaining that appellate courts "review[] judgments, not statements in opinions" (citation omitted)).  And the nature of the procedural vehicle by which Mr. Kutz seeks to raise that challenge is not in dispute: he brings an appeal, not a collateral attack or some other mechanism that might instead be covered by some other language in the Plea Agreement.  But, except in limited circumstances inapplicable here, the waiver prevents Mr. Kutz from pursuing an "[a]ppeal" in *this court* of "his sentence," the precise procedural vehicle and exact result challenged here.  Plea Agreement at 9.  Mr. Kutz advances no textual or reasoned argument to the contrary.

In sum, according to the Plea Agreement, Mr. Kutz opted to forego an appeal exactly like this one in favor of a discretionary sentence not in excess of the statutory maximum and below the Guidelines range determined by the district court.  If the district court committed any legal error in making that Guidelines calculation, it is within the scope of the waiver enumerated in Mr. Kutz's Plea Agreement with the Government.  Mr. Kutz long ago received the benefits of that bargain, including dismissal of another charge.

### 3. *Knowing and voluntary*

We next proceed to discuss whether Mr. Kutz entered into this Plea Agreement knowingly and voluntarily.  Of course, "[w]e only enforce waivers

13

that defendants enter into knowingly and voluntarily." Tanner, 721 F.3d at 1233 (citation omitted). "If a guilty plea is not knowing and voluntary, it is void, and any additional waivers in the plea agreement generally are unenforceable." United States v. Jim, 786 F.3d 802, 806 (10th Cir. 2015) (citation omitted).

"Whether a guilty plea was entered knowingly and voluntarily is . . . a question of law we review de novo." United States v. Rollings, 751 F.3d 1183, 1191 (10th Cir. 2014). It is a defendant's "burden to show that his guilty plea was not knowing or voluntary." Jim, 786 F.3d at 810. To "meet this burden," a defendant must "prove"—i.e., point to sufficient direct or circumstantial evidence—"that his plea was not knowing and voluntary." Id.

"In determining whether a defendant waived his appellate rights knowingly and voluntarily, 'we especially look to two factors.'" Tanner, 721 F.3d at 1233 (quoting Hahn, 359 F.3d at 1325). "The first factor is 'whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily' and the second is whether there was 'an adequate Federal Rule of Criminal Procedure 11 colloquy.'" Id. (quoting Hahn, 359 F.3d at 1325).

### a. The text of the Plea Agreement

When "considering whether an appellate waiver is knowing and voluntary, we consider whether the defendant entered into the plea agreement knowingly and voluntarily." Rollings, 751 F.3d at 1190. That is to say, "[i]nstead of looking solely to the defendant's understanding of the relinquished rights—such as jury

14

trial, appeal, sentencing certainty—we have also looked to whether the defendant understood the nature of the charges and the consequences of the guilty plea itself." Id. at 1188 (collecting cases). If "the defendant did not voluntarily enter into the agreement, the appellate waiver subsumed in the agreement also cannot stand." Id. at 1189. "Where a plea agreement contains a plea and an appellate waiver, we may therefore look to whether the plea was knowing and voluntary in deciding whether the plea agreement was entered knowingly and voluntarily." Id. at 1190–91. However, "[w]here only the appellate waiver provision is challenged, as in most cases, we are not obligated to consider whether the plea in the plea agreement is valid." Id. at 1190 n.5. This is the case here.

Specifically, Mr. Kutz does not claim that his guilty plea itself was either unknowing or involuntary, and he does not seek to withdraw it. He also does not analyze the text of the Plea Agreement to contest his knowing and voluntary agreement to each of its relevant provisions. The text of the appeal waiver is broad, but neither subtle nor ambiguous about that breadth. It states that Mr. Kutz "understands that the Court has jurisdiction and authority to impose any sentence within the statutory maximum for the offense(s) to which he is pleading guilty." Plea Agreement at 8. The Plea Agreement also discusses his "right to appeal the judgment and sentence imposed by the Court," which he "[a]cknowledg[ed]" he was giving up. Id. In fact, he "knowingly and voluntarily waive[d] his right to" appellate review in perpetuity with respect to, *inter alia*,

15

any at-or-under-maximum sentence.  Id.  Nothing in this or any other provision of the Plea Agreement suggests that Mr. Kutz was unaware he was explicitly waiving these valuable appeal rights in exchange for the benefits the Government offered.

Mr. Kutz takes a different approach to this text.  He admits that he "entered into a plea agreement that *contained an appellate waiver*," but emphasizes that he did so "when he was facing an enhanced penalty under the [ACCA]."  Aplt. Reply Br. at 5 (emphasis added).  He adds that "[t]he issue whether [he] qualified as a career offender was irrelevant at the time he entered into the plea agreement," that "[i]t was only after" Johnson was decided, "and the district court vacated his sentence[] based on" the ACCA, "that the issue of career offender took on any meaning for Mr. Kutz."  Id. at 5–6.  From this view of the record, he concludes that he "could not have foreseen these new and significant constitutional developments at the time he entered into the plea agreement."  Id. at 6.

Mr. Kutz's claim is belied by the fact that his Guidelines range was calculated to be the same at both sentencing proceedings.  When Mr. Kutz entered into the Plea Agreement, as now, he knew the calculation of his Guidelines range mattered, and yet he signed the Plea Agreement containing the appeal waiver.

Further, it is Mr. Kutz's burden to advance a textual ambiguity in the Plea Agreement which would permit him to benefit from later changes in the law.  See Jim, 786 F.3d at 810.  This he has not done.  When he was sentenced in 2011,

moreover, the Supreme Court's retroactivity jurisprudence was not only foreseeable, it was hornbook law. See, e.g., Beard v. Banks, 542 U.S. 406 (2004); Schriro v. Summerlin, 542 U.S. 348 (2004); Teague v. Lane, 489 U.S. 288 (1989). We conclude that the text of the Plea Agreement evidences a knowing and voluntary decision to waive the claims here.

### b. The plea colloquy

"In considering the totality of the circumstances, either the express language of the plea agreement, if sufficiently clear, detailed, and comprehensive, or the probing inquiry of a proper Rule 11 colloquy could be enough to conclude the waiver was knowing and voluntary." Tanner, 721 F.3d at 1234. As we stated in Tanner, "the synergistic effect of both will often be conclusive." Id. To that end, we have explained that "[a] properly conducted plea colloquy, particularly one containing express findings, will, in most cases, be conclusive on the waiver issue, in spite of a defendant's post hoc assertions to the contrary." Id. at 1233. Finally, where a defendant "has not presented any argument or evidence that the waiver was unknowing or involuntary, and our independent review d[oes] not identify any basis to determine otherwise," we have often "conclude[d] that this portion of the" waiver "analysis also is satisfied." United States v. Cudjoe, 634 F.3d 1163, 1167 (10th Cir. 2011).

Mr. Kutz does not address the plea colloquy. He has therefore waived any argument that he might have raised based on an inadequate colloquy. See United

17

States v. De Vaughn, 694 F.3d 1141, 1154–55 (10th Cir. 2012). Moreover, our independent review of the plea colloquy alleviates any doubt on this score. The transcript of the change-of-plea hearing reveals that the district court was thorough and methodical in its approach during the lengthy colloquy. As just one pertinent example, the district court ensured that Mr. Kutz understood he had "certain appeal rights," that he was "waiving most of" them, and that this included his "right to appeal the sentence that" the court "impose[d] in this case, as long as that sentence [wa]s within or below the guideline range that [the district court] appl[ied] in this case." Plea Tr. at 11–12. The district court also ensured that Mr. Kutz knew that, under the Plea Agreement, he was "waiving those rights even though [he] d[id] not yet know what [his] sentence . . . [would] be." Id. at 12. Mr. Kutz responded: "Yes, Your Honor." Id. Mr. Kutz's own words during the plea colloquy belie his claim that he did not understand he was giving up his right to bring this appeal of his sentence to challenge the district court's Guidelines calculation. See Cudjoe, 635 F.3d at 1166–67. The colloquy also convinces us that Mr. Kutz pled guilty and entered into the Plea Agreement voluntarily.

Combined with the unambiguously broad appeal waiver in the Plea Agreement itself, the plea colloquy is conclusive that Mr. Kutz knowingly and voluntarily waived his right to bring this appeal. See Tanner, 721 F.3d at 1233–34.

18

#### 4. *The miscarriage of justice exception*

Mr. Kutz's final argument is that it would be a miscarriage of justice to enforce this valid appeal waiver. "For purposes of the enforcement of an appeal waiver, '[a] miscarriage of justice occurs'" in only four sets of circumstances. Polly, 630 F.3d at 1001 (alteration in original) (quoting United States v. Shockey, 538 F.3d 1355, 1357 (10th Cir. 2008)). They are: (1) "where the district court relied on an impermissible factor such as race"; (2) "where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid"; (3) "where the sentence exceeds the statutory maximum"; or (4) "where the waiver is otherwise unlawful." Id. (quoting Shockey, 538 F.3d at 1357). Further, this "list is exclusive: 'enforcement of an appellate waiver does not result in a miscarriage of justice unless enforcement would result in one of the four situations enumerated' above." Id. (quoting Shockey, 538 F.3d at 1357).

None of the first three circumstances are at issue here. Regarding the fourth, Mr. Kutz vaguely alludes to "preserv[ing] the integrity of the judicial system" as a rationale for circumventing the valid waiver. Aplt. Reply Br. at 6. But "Mr. Kutz's appeal of the sentence imposed on resentencing is based" solely "on the argument [that] the sentencing guidelines were improperly calculated." Id. at 9. And he claims that, "[i]f he is successful[,] then he will have shown the district court's sentencing decision was not procedurally sound." Id. In his view, this alleged "error affects the fairness, integrity, and public reputation of the

19

judicial proceedings held in this case[,] satisfying the miscarriage of justice factor," and permitting him to appeal despite the valid appeal waiver contained in the Plea Agreement. Id.

Mr. Kutz's argument misses the mark because he conflates the fourth prong of the standard for plain error review with the fourth, distinct avenue to circumvent an otherwise-enforceable appeal waiver—i.e., where a "miscarriage of justice" would result. Polly, 630 F.3d at 1001. Specifically, it is true that in Hahn we held "that to satisfy the fourth . . . factor"—i.e., to prove "the waiver is otherwise unlawful—'the error [must] seriously affect[ ] the fairness, integrity or public reputation of judicial proceedings[,]' as that test was employed in United States v. Olano, 507 U.S. 725, 732 (1993)." 359 F.3d at 1327 (alterations in original).

We have since clarified, however, that these inquiries—whether there is plain error and whether enforcing a plea agreement would result in a miscarriage of justice—involve similar questions, but questions aimed at different issues. Specifically, an allegation "that enforcement of the waiver would seriously affect the fairness and integrity of the proceedings" *by itself* "does not fit into any of the categories." Polly, 630 F.3d at 1001. For example, we have "applied the defendant's appeal waiver to bar a claim that the district court erred in applying" a Guideline "enhancement, and that the error 'affect[ed] the fairness of the proceedings, as well as the integrity and public reputation of the judicial

20

system.'" Id. (alteration in original) (citation omitted). We explained:

> [T]he miscarriage of justice exception to enforcement of a waiver of appellate rights . . . looks to whether "the *waiver* is otherwise unlawful," not to whether another aspect of the proceeding may have involved legal error. . . . [A]lleged errors in the [district] court's determination of [a] sentence . . . [improperly] "focus[] on the result of the proceeding, rather than on the right relinquished, [which is our focus when] analyzing whether an appeal waiver is [valid]."

Id. at 1001–02 (last alteration in original) (citations omitted).

Said more succinctly: "An appeal waiver is not 'unlawful' merely because the claimed error would, in the absence of waiver, be appealable. To so hold would make a waiver an empty gesture." United States v. Leyva–Matos, 618 F.3d 1213, 1217 (10th Cir. 2010) (citation omitted). "When faced with appellate waivers like the one in this case, we have consistently applied this principle and enforced such waivers accordingly." Id. Consequently, we have held that where a defendant "does not challenge the lawfulness of the waiver itself, enforcing the waiver as to his claim that the district court improperly applied [a Guidelines] enhancement does not result in a miscarriage of justice." Polly, 630 F.3d at 1002.

This is precisely the claim that Mr. Kutz now makes with respect to the determination of the length of his sentence based on his allegedly erroneous classification as a "career offender" under USSG §§ 4B1.1 and 4B1.2. He claims that "[t]he miscarriage of justice exception" itself "enables reviewing courts to permit review of convictions and sentences otherwise barred by a knowing and voluntary appellate waiver covering the scope of the alleged error." Aplt. Reply

Br. at 6. To the contrary, it is dispositive that Mr. Kutz does not claim the waiver itself is unlawful. "The appeal waiver thus bars this claim," Polly, 630 F.3d at 1002, even if on review of the merits we might have granted relief.

### 5. *Conclusion*

Mr. Kutz knowingly and voluntarily entered into the Plea Agreement that contains an explicit waiver of his right to appeal his sentence, which is what he now attempts to do. He does not assert that his sentences are above the statutory maximum, or that they are based on any of the other narrow circumstances which would bar our enforcement of an otherwise-valid appeal waiver. Therefore, his valid appeal waiver forecloses our consideration of this appeal.

### III

We GRANT the Government's Motion to Supplement the record with the transcript of the change-of-plea hearing. We conclude Mr. Kutz's Plea Agreement, which included a waiver of his right to appeal his sentences, was entered knowingly and voluntarily. Accordingly, we enforce the appeal waiver and DISMISS this appeal.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

22